**Marjorie M. GORDON, Plaintiff-Respondent,**

**v.**

**George MAUPIN, Defendant,**

**and**

**American Family Mutual Insurance Company, Defendant-Appellant.**

**No. 33833.**

St. Louis Court of Appeals, Missouri.

April 27, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied May 25, 1971.

Application to Transfer Denied Sept. 13, 1971.

Bollow, Crist & Bollow, Shelbina, for plaintiff-respondent.

Collins & Grimm, by David Collins, Macon, for defendant-appellant.

CLEMENS, Commissioner.

The issue here: Does the other-insurance-available clause in plaintiff's uninsured motorist policy preclude recovery when the other insurance was not actually available

to her? We say no and affirm plaintiff's $5,000 judgment against her insurer, defendant American Family Mutual Insurance Company (American).

American wrote two similar public automobile liability policies, one to plaintiff Marjorie Gordon and the other to her sister-in-law Phyllis Gordon. Each policy gave $5,000–$10,000 limit uninsured motor vehicle coverages.[1]

On February 11, 1965 plaintiff was one of three guest passengers in Phyllis Gordon's automobile when it was struck headon by an automobile negligently driven by defendant George Maupin, whose automobile was uninsured. Phyllis Gordon, her two daughters and plaintiff were injured; plaintiff's damages admittedly were $5,000. Under the uninsured motorist provision of Phyllis Gordon's policy she and her three guest passengers were "insureds." American paid Phyllis Gordon and her daughters $8,397 and admitted liability to plaintiff for the $1,603 remainder of Phyllis Gordon's policy limit. Plaintiff declined to so limit her recovery and sued American for $5,000 under the uninsured motorist coverage of her own policy. The trial court gave plaintiff a $5,000 judgment and American appeals.[2]

By the insuring agreement of plaintiff's uninsured motorist policy American promised "to pay all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * * *." That sum is $5,000. Nonetheless American contends the $10,000 uninsured motorist coverage of Phyllis Gordon's policy was available to plaintiff and therefore it is not liable to her under her own policy. American points to the other-insurance-available clause of plaintiff's policy: "With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance." American contends Phyllis Gordon's $10,000 coverage was "available" to plaintiff—even though American used $8,397 of it to pay the other three claimants—and since plaintiff's own $5,000 coverage obviously did not exceed Phyllis Gordon's $10,000 coverage, American says it is not liable to plaintiff under her policy. We reject that contention as an unwarranted interpretation of the word "available."

In interpreting plaintiff's policy we follow established principles. In the oft-cited case of Brugioni v. Maryland Casualty Company, Mo., 382 S.W.2d 707 [2–4], our supreme court said: "It is true * * * that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. On the other hand, an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting the coverage of the policy, will be construed most strongly against the insurer." And, as concerns uninsured motor vehicles, liberal interpretation is a matter of Missouri's public policy to assure payment to persons negligently injured on public highways. Winterton v. VanZandt, Mo., 351 S.W.2d 696 [1, 2].

It matters not whether we look upon Phyllis Gordon's $10,000 uninsured motorist coverage as being "available" at the time

---

1. These policies were issued before enactment of present §§ 303.030 and 379.203, RSMo 1969, V.A.M.S., specifying $10,000–$20,000 limit uninsured motorist coverage.

2. Plaintiff also had a default judgment against the co-defendant uninsured motorist, George Maupin, from which no appeal has been taken.

of collision or at the time plaintiff sued. At collision time the $10,000 coverage was available to plaintiff only in a hypothetical sense; it was equally available to the other three injured persons and available to plaintiff only to the extent that it might not be paid to the other three. At the time of suit only $1,603 was available to plaintiff because only that much was left after American had paid $8,397 to the other three claimants to the $10,000 fund. In either case plaintiff did not have $5,000 available to her under the Phyllis Gordon policy.

This issue of other-available insurance under uninsured motorist coverage is novel in Missouri but was dealt with squarely—and we think properly—in Kraft v. Allstate Insurance Company, 6 Ariz.App. 276, 431 P.2d 917. There, as here, plaintiff was a guest passenger in an automobile struck by an uninsured automobile. The coverage under the host's uninsured motorist policy became exhausted and plaintiff sued Allstate under his own uninsured motorist policy. As here, that policy declared Kraft's coverage did not apply if the host driver "has insurance similar to that afforded by this section and such insurance is available to the insured." The court posed the issue "We must determine whether 'other similar insurance available' means insurance proceeds that an insured may collect and spend, or simply, as Allstate Insurance Company contends, 'other' insurance existing on paper?" The court then interpreted the word "available" to mean "actually available for the use of the injured party," saying:

"In holding that the word 'available' must be construed to mean 'actually available for the use of the injured party,' the court [in Travelers Indemnity Company v. Wells, D.C., 209 F.Supp. 784, 1.c. 790] relied on its interpretation of the Virginia Uninsured Motorist Statute. It pointed out that in the light of the public policy underlying the statute, i. e., compensation to an injured party who was not at fault, this construction was mandated * * *

"This construction is reasonable, notwithstanding absence of a statute, where an insured has paid an additional premium to protect himself under such circumstances. To permit the insurance company which received the additional premium to avoid liability when its insured *in fact* cannot collect for his loss under the 'other insurance' shocks the conscience of this court * * * Allstate charged a premium for the coverage; it cannot be permitted to vanish as the pea in the shell game. We hold that other insurance was not available to Kraft and Allstate's coverage for uninsured motorist protection remains."

We hold that coverage under the Phyllis Gordon policy was only hypothetically or partially available to plaintiff, not actually available to her to the extent of her own coverage. In purchasing her own policy plaintiff paid for $5,000 protection for damage caused by an uninsured motorist. Since that sum was not actually available to her under the Phyllis Gordon policy plaintiff is entitled to recover $5,000 from American.[3]

We have considered the points briefed by American's counsel. The most pertinent case cited is Tindall v. Farmers Automobile Management Corporation, 83 Ill.App.2d 165, 226 N.E.2d 397, 28 A.L.R.3d 546. The Tindalls were guest passengers in the Boedeckers' automobile when it was struck by an uninsured automobile. The Tindalls claimed $20,000 damages. The $20,000 limits of the Boedeckers' uninsured motorist policy were partially exhausted by payment of $9,500 to the Boedeckers and the Tindalls were paid only $10,500 under the Boedecker policy. The Tindalls sued their own in-

---

3. Had some other insurer written the Phyllis Gordon policy plaintiff could have recovered $1,603 from that insurer and the $3,397 remainder from American, the latter sum being the difference between the $5,000 limit of plaintiff's policy and the $1,603 available to her under the Phyllis Gordon policy. Since American wrote both policies its total obligation to plaintiff is $5,000.

surer for the unpaid $9,500 under their uninsured motorist $10,000–$20,000 limit policy which had, as here, an other-insurance-available clause. The court denied Tindalls' claim on the ground the Boedeckers' policy afforded "other available insurance." The court did not discuss the key word "available." Instead it based its decision on what could be called a substituted coverage theory: That the plaintiffs and the Boedeckers were entitled to no greater protection than they would have had if the uninsured motorist had carried the minimum $10,000–$20,000 uninsured motorist coverage. Although the substituted coverage theory is not novel[4] we reject it here.

A hypothetical illustration will demonstrate that the substituted coverage theory is unreasonable. Assume A and his five guest passengers each has his own $10,000–$20,000 uninsured motorist policy; that all five passengers are severely injured when A's automobile is negligently struck by X, an uninsured motorist, who should have had $10,000–$20,000 liability insurance. Each of the five passengers makes a $10,000 claim against his own insurer under his own uninsured motorist policy. To apply the *Tindall* theory of substituted coverage our courts would have to say to each of the five insureds: "No, if X had complied with the Safety Responsibility Law he would have had only $20,000 available for all five of you—$4,000 apiece; so, your insurers are obliged only to pay each of you $4,000 even though your insurer contracted to pay you $10,000 for damage by an uninsured motorist." Such a result is repugnant to logic and to a liberal interpretation of plaintiff's policy.

Instead, we adopt the ruling on this point declared in Horne v. Superior Life Insurance Company, 203 Va. 282, 123 S.E.2d 401, l. c. 404. There the court rejected the substituted coverage theory since the purpose of uninsured motorist insurance is to give needed protection to injured persons who had paid for such insurance, not for the purpose of protecting the uninsured motorist. The ruling in that case at 123 S.E.2d, l. c. 401, paraphrased to fit our case: It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle; its object is to afford the insured additional protection in the event of an accident. Here, American does not insure George Maupin, the uninsured motorist, against liability. It insures plaintiff Marjorie Gordon against inadequate compensation. She chose to provide, at her own expense, additional protection under the uninsured motorist provision of her policy.

Next, defendant cites what have been called "stacking" cases. We agree with defendant's premise but hold this is not a "stacking" case. In the cited cases[5] the injured guest passenger first recovered under his host driver's uninsured motorist coverage, and then sought to recover damages for the same injuries under his own uninsured motorist policy. Such double recovery has been properly denied because "other insurance" was actually available to and recovered by the plaintiff under his host driver's uninsured motorist coverage. The other-insurance-available clause in the plaintiff's own policy clearly precludes such "stacking" of coverage. These cases do not help American here because plaintiff Mar-

4. Tindall v. Farmers Automobile Management Corp., 83 Ill.App.2d 165, 226 N.E.2d 397; Maryland Casualty Company et al. v. Howe et al., 106 N.H. 422, 213 A.2d 420, l.c. 422; Darrah et al. v. California State Automobile Ass'n et al., 259 Cal.App.2d 243, 66 Cal.Rptr. 374.

5. Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 N.W.2d 500, l. c. 503; Maryland Casualty Company et al. v. Howe et al., 106 N.H. 422, 213 A.2d 420, l. c. 422; Russell v. Paulson, 18 Utah 2d 157, 417 P.2d 658, l. c. 660, 662; M.F.A. Mutual Insurance Company v. Wallace, 245 Ark. 230, 431 S.W.2d 742; LeBlanc v. Allstate Insurance Company, La.App., 194 So.2d 791; and Miller v. Allstate Ins. Co., 66 Wash.2d 871, 405 P.2d 712, holding that "stacking" was no defense against an insured who gave credit for the amount of other insurance received and sued his own insurer only for the unpaid balance of his claims.

jorie Gordon is not "stacking" her claim; she has received nothing under the Phyllis Gordon policy, and is seeking recovery only under her own policy.

In summary, we hold that the Phyllis Gordon policy did not afford funds available to pay plaintiff's claim and therefore defendant's other-insurance-available clause in plaintiff's policy did not excuse defendant from paying her the $5,000 contracted for in her policy.

Judgment affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not sitting.