354 F.Supp. 105 (1972)
Sheila FRENCH, by her next friend, Clovis French, et al., Plaintiffs,
v.
FARMERS INSURANCE COMPANY, INC., Defendant-Third-Party Plaintiff,
v.
Ronald J. BERKBUEGLER, Third-Party Defendant.
No. S71C90.
United States District Court, E. D. Missouri, Southeastern Division.
December 29, 1972.
*106 Raymond H. Vogel, Vogel & Frye, Cape Girardeau, Mo., for plaintiffs.
Paul V. Gilbert, Jackson, Thomasson, Dickerson & Gilbert, Cape Girardeau, Mo., for defendant.

MEMORANDUM OPINION
WEBSTER, District Judge.
In this action, tried to the court, plaintiffs seek to recover damages for personal injuries to Sheila French and consequential damages under the uninsured motorist provisions of two policies issued by defendant Farmers Insurance Company. Jurisdiction is founded upon diversity of citizenship, and the amount in controversy exceeds $10,000. 28 U.S. C. § 1332.
This case, as well as in a companion case arising out of the same accident, decided today,[1] presents for determination in an emerging area of the law a number of legal issues which have not been expressly resolved by the courts of Missouri (in which the accident occurred), and as to which the courts of other jurisdictions are sharply divided.

I

Fault
The findings of fact as set forth in Part I of the Memorandum Opinion in Koeper et al. v. Farmers Insurance Company, 354 F.Supp. 93 (E.D.Mo.1972) are adopted and incorporated herein by reference.
On the evidence adduced, the court finds that Ronald J. Berkbuegler failed to exercise the highest degree of care by having his automobile under control at the time of the accident, due to the speed at which he was travelling or his failure to observe Erlacker's automobile and avoid the collision by reducing speed or swerving his own automobile. The court finds no evidence of contributory negligence by Erlacker or any of his passengers. The court finds no evidence of contributory negligence by Sheila French or any other passenger in Berkbuegler's automobile. The court further finds that the collision which resulted in injuries to Sheila French was proximately caused by the negligence of Ronald J. Berkbuegler; and that Ronald J. Berkbuegler would be legally responsible to pay damages for the injuries of Sheila French and consequential damages resulting from such negligence.

II

Damages
Sheila French was taken in an unconscious condition to Perryville County Hospital where she was promptly transferred to St. Luke's Hospital in St. Louis, Missouri. She was 14 years 11 months old. She remained at St. Luke's Hospital from July 10, 1970 to July 23, 1970, returning to her home in Perryville, Missouri at that time. Dr. *107 George L. Hawkins, Jr., a specialist in neurological surgery, examined Sheila early in the morning of July 10th. She was unconscious and did not respond to the spoken voice. She could be aroused by painful stimulation to move her arms and legs in a protective, flexor manner, and at times, could move her arms in a purposeful manner without stimulation. She did not talk and did not communicate. She regained consciousness at the hospital but continued to be disoriented. She called her mother by her sister's name and her father by her brother's name and was frequently incoherent. Her memory was quite poor at the time she left the hospital, but had improved by August 18, 1970 when she was again examined by Dr. Hawkins. Her eyes, facial movements, ability to move her arms and legs, reflexes and sensations were normal at that time. Based upon his observation of Sheila, her memory defect at the time of such treatment and her inability to maintain her prior academic level of performance as reported to him, Dr. Hawkins testified that in his opinion Sheila had suffered permanent brain damage. He testified as follows:
"A Well, she had a severe shaking-up of her brain at the time of her injury, which render her unresponsive to spoken voice, unresponsive to the environment, so that she could not do for herself for some days.
"She progressively, gradually improved from this, but some of the brain cells were more than just stunned, which stunned cells have resumed their function, so that she can now talk and can now respond to her environment, and can act in a thinking manner. But some of the cells were damaged to such an extent that they died, and it is a result of these of this loss of brain substance that she has trouble in the intellectual sphere, and cannot think as well as she did before, and cannot perform as well, intellectually, as she did prior to her injury."
Dr. Hawkins' last examination was on June 22, 1971, eleven months after the injury. He concluded from his examination that Sheila had made essentially all of the recovery that she was going to make, and he rated her intellectual disability at about 15 to 20%. Upon cross-examination, he conceded that it was possible for her to make additional recovery during the six months following June 22, 1971, it being accepted medically and in neurological circumstances that there can be some memory recovery up to a period of approximately 18 months after trauma.
Prior to the accident, Sheila had been a healthy, well-motivated girl, with a "B" average who had participated in the "college bound" program, or track 1 as it was also known. She ranked 51 in a class of 258 at the end of her freshman year. When she returned to school to enter her sophomore year after the accident, she immediately encountered difficulty with some of the courses which had been scheduled for her. She was unable to handle geometry or biology due to her inability to recall numbers. Jeannett Boehm, an experienced school counselor at Perryville Senior High School, rescheduled Sheila in track 3, the lowest track. Courses in this track included study assignments in some courses for which no college credit would be recognized. Even in the lower level of competition, her grades, which formerly had been "B" in the top competition, dropped to "Cs". Some improvement was achieved in the last semester of her junior year, but she is still able to do only track 3 work. Miss Boehm testified that Sheila cannot meet ordinary admission requirements for college entrance on the basis of the courses that she has been able to take and doubted her ability to score high enough on tests scores for entrance in a normal academic setting.
Testimony was adduced which reflected that in April, 1969, Sheila had tested in the top 67% percentile of students at her grade level nationally. When tested in September, 1970, some 60 days after the accident, her ranking had dropped to the 28th percentile nationally. In reaching *108 a verdict as the trier of the fact, the court has not considered such tests as conclusive of the issue, but finds that they are supportive of plaintiff's position that as a result of the accident, Sheila has sustained substantial impairment to her capacity to learn and achieve through education.
In addition to the memory defect, Sheila sustained a fractured mandible (jawbone), a lacerated tongue, a laceration under her chin and a laceration to her right knee. The lacerations were sutured at St. Luke's Hospital. All have healed. A visible scar remains under the chin and on the right knee. These can be substantially corrected by cosmetic surgery requiring approximately five days hospitalization, but the scars are permanent. Sheila testified that the scars are not painful, but knowledge of their appearance occasionally "bugs" her.
Treatment of the mandible required the application under general anesthesia of arch bars or braces on the upper and lower teeth and the use of rubberbanks between the upper and lower arch bars to immobilize the teeth. The arch bars were removed on August 18th. On September 25th, Sheila was again examined by the treating plastic surgeon, Dr. George Zografakis, who found her teeth in good occlusion. A good healing was observed on subsequent visits. And on April 3, 1972, Dr. Zografakis reported that the jaw had healed.
Additionally, plaintiff Clovis French claims loss of earnings of $256.00 while attending to Sheila and $72.00 for travel expense.
The court finds that plaintiff Sheila French's damages are no less than $75,000. Thus, the damages established are far in excess of the combined coverages of defendant's policies, each of which provide $10,000 per person coverage under the uninsured motorist clause and $500 per person under the medical expense payment clause.

III

Uninsured Motorist Liability
Sheila French was covered under two policies of insurance issued to her father by defendant Farmers Insurance Company  policies No. 1429160220 and No. 1426200820. Each policy contained identical provisions for uninsured motorist coverage.
Farmers contends that the limit of its liability is the highest coverage under one of its two policies. It relies upon Condition 13, its "other insurance" clause, and also upon Condition 8, its "other insurance in the company" clause. The conditions in both policies are identical.
Condition 13 provides:
"COVERAGE C
With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorist coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."
Defendant argues that this condition applied because Sheila was riding in a car not owned by the insured. For purposes of this Memorandum Opinion, Condition 13 in its entirety will be described as an "other insurance" provision. The first portion of Condition 13 will be referred to as the "excess clause". The final clause of the "other insurance" provision (". . . and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.") will be referred to as the "excess-escape" clause.
The applicability and validity of Condition 13 was considered at length in *109 the companion case of Koeper et al. v. Farmers Insurance Company, supra, in connection with primary insurance carried by the owner of the host automobile. We held there that the Supreme Court of Missouri would enforce the excess clause requiring exhaustion of the host coverage before applying the coverage of the policy covering plaintiff as a named insured, but anticipated that the Supreme Court of Missouri would not apply the excess-escape clause until all damages had been recovered up to the full limits of the policy. The cases cited therein, and upon which we rely in this case, demonstrate that the courts generally make no distinction, in the adjudication of "other insurance" clauses between cases involving policies of the same company and cases involving policies of different companies. We therefore find and conclude that Condition 13 would not operate to reduce the exposure of defendant for the total amount of damages sustained up to the total limit of the two policies, or $20,000.

Validity of "Other Insurance in the Company" Clause
The uninsured motorist coverage of the two policies issued by defendant contain the following clause:
"8. OTHER INSURANCE IN THE COMPANY
With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy."
Defendant contends that notwithstanding the court's holding on the applicability of the "other insurance" clause (Condition 13, supra), the "other insurance in the company" clause of Condition 8 operates to limit plaintiff's recovery to the "higher" of the uninsured motorist limit of both Farmers policies. Since the limit of each policy is $10,000, the "higher" limit, and thus the maximum amount available from both, is $10,000, according to defendant's argument. The question posed is whether under Missouri law an insurer may limit an insured's recovery to only one of several policies it issues through the use of an "other insurance in the company" clause.
"Other insurance in the company" clauses have been upheld to limit recovery of medical expense to the highest applicable limit of liability under any one policy issued by the company and covering the insured. Kisling v. MFA Mutual Insurance Company, Mo.App., 399 S.W.2d 245, 252; Northwestern Mutual Insurance Company v. Haglund, Mo.App., 387 S.W.2d 230, 232. No public policy prevents this if the insured is willing to accept the limitation. However, where the public policy of the state will not permit an "other insurance" excess-escape clause to limit the uninsured motorist coverage, such states have generally refused to permit that result to be achieved by resort to an "other insurance in the company" clause. Booth v. Seaboard Fire & Marine Insurance Company, 431 F.2d 212 (8th Cir. 1970), (applying Nebraska law). Smith v. Pacific Auto Ins. Co., 240 Or. 167, 400 P. 2d 512 (1965); Bryant v. State Farm Mutual Auto Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965); Sellers v. United States Fidelity & Guaranty Company, 185 So.2d 689 (Fla.1966).
The precise factual question was not presented in Gordon v. Maupin, 469 S. W.2d 848 (Mo.App.1971), where the damages did not exceed the limits of one of the two policies of the defendant insurer. However, the court rejected the holding in Tindall v. Farmers Automobile Management Corporation, 83 Ill. App.2d 165, 226 N.E.2d 397, that plaintiffs were entitled to no greater protection than they would have had if the uninsured motorist had carried the minimum requirements of automobile insurance. 469 S.W.2d 848, 850-851.
*110 Since we have held that the Supreme Court of Missouri would apply the excess-escape clause of Condition 13 only after adjudicated damages had been recovered, we conclude that a similar and consistent position would be taken vis-a-vis the "other insurance in the company" provisions of Condition 8.

IV

Medical Expense Coverage
Medical expense coverage was provided in each of defendant's two policies in the amount of $500 per person. The policies are in evidence and the complaint will be deemed amended to conform to the proof. The medical expense coverage cannot be applied under Condition 13 or Condition 8 to reduce the limits of coverage under its uninsured motorist provisions. Webb v. State Farm Mutual Automobile Insurance Company, 479 S.W.2d 148 (Mo. App.1972). For the same reasons set forth in Koeper et al. v. Farmers Insurance Company, supra, Part IV, the "other insurance in the company" provisions of Condition 8 limit recovery to one of the two $500 coverages.
Plaintiff concedes that defendant has paid $1,800 of plaintiffs' medical expenses. Defendant is therefore entitled to a credit of $1,300 against its liability for uninsured motorist coverage.

V

Failure to Join Erlacker as a party Defendant
Defendant contends that under the policy provisions it had a right to and did demand that plaintiffs join Richard J. Erlacker, driver of the other automobile, as a party defendant. Paragraph 3 of the uninsured motorist coverage provisions provides:
"3. Assistance and Cooperation of the Insured: After notice of claim the Company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury; and in any action against the Company, the Company may require the insured to join such person or organization as a party defendant."
Plaintiffs amended complaint does not allege that Erlacker is legally responsible for Sheila's injuries. The court has found no negligence or legal responsibility attributable to Erlacker. Moreover, under Missouri law, an insured is not required to join the uninsured tortfeasor in order to maintain his action, and if joined as a defendant he may be dismissed over the objection of the codefendant's insurance company. Reese v. Preferred Risk Mutual Insurance Co., 457 S.W.2d 205 (Mo.App. 1970). Defendant's contention is without merit.

VI

Right of Indemnification
In Count II of the amended complaint, plaintiffs seek to have the court declare "the rights, duties and legal relations of Plaintiffs and Farmers Insurance Company, Inc. with regard to said Defendant's right to indemnification under the said policies of insurance and otherwise from any judgment or recovery against Richard Erlacker * * *"
The contract provides for subrogation and, alternatively declares that the insured will hold in trust for the insurer any judgments or settlements obtained against "any person * * * legally responsible for the bodily injury because of which such payment is made * * *" The trust agreement is sanctioned by the statute, which provides:
"4. In the event of payment to any person under the coverage required by this section, and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally *111 responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer."
V.A.M.S. § 379.203(4).
See Kroeker v. State Farm Mutual Automobile Ins. Co., 466 S.W.2d 105 (Mo.App.1971).
This court concludes and declares that defendant would be entitled under Missouri law to recover out of any payments made to plaintiffs by "any person * * * legally responsible for the bodily injury for which such payment is made" any payments made by it to plaintiffs under the uninsured motorist provisions of its policies. This is the extent however of the court's ability to declare the rights of the parties. Erlacker is not a party to this suit. No negligence by him was alleged or proved. His legal responsibility is, by contract and statute, made a condition of defendant's right to recover out of any payments from Erlacker to plaintiffs.

VII

Judgment to be Entered
In summary, this court concludes that the Supreme Court of Missouri would, on the facts presented here, hold under Missouri law (1) that plaintiff Sheila French is entitled to recover her damages to the limit of the combined uninsured motorist coverage of $20,000; (2) that plaintiff would be entitled to recover $500 under the medical expense coverage of one policy and that $1,800 has been paid by defendant, permitting a credit of $1,300 against its liability under its uninsured motorist coverage; (3) that plaintiffs' refusal to join Erlacker as a defendant does not preclude recovery against defendant Farmers Insurance Company; (4) that defendant-third party plaintiff is entitled to recovery over against the uninsured motorist third party defendant, Ronald Berkbuegler, who is in default; and (5) that defendant is entitled to recover its payments to plaintiff out of the proceeds of any payments in the nature of judgments or settlements made to plaintiffs by any person legally responsible for the bodily injury to Sheila French.
The foregoing constitutes the court's findings of fact and conclusions of law. Judgment will be entered accordingly.
So ordered.
NOTES
[1] Koeper et al. v. Farmers Insurance Company, 354 F.Supp. 93 (E.D.Mo.1972).