354 F.Supp. 93 (1972)
John J. KOEPER and Beulah Marie Koeper, Plaintiffs,
v.
FARMERS INSURANCE COMPANY, INC., Defendant.
No. S71C87.
United States District Court, E. D. Missouri, Southeastern Division.
December 29, 1972.
*94 Raymond H. Vogel, Vogel & Frye, Cape Girardeau, Mo., for plaintiffs.
R. A. Wegmann, Dearing, Richeson, Roberts & Wegmann, Hillsboro, Mo., for defendant.

MEMORANDUM OPINION
WEBSTER, District Judge.
In this action, tried to the court, plaintiffs seek to recover damages for the wrongful death of their daughter under the uninsured motorist provisions of two policies issued by defendant Farmers Insurance Company. Jurisdiction is founded upon diversity of citizenship, and the amount in controversy exceeds $10,000. 28 U.S.C. § 1332.
This case presents for determination in an emerging area of the law a number of legal issues which have not been expressly resolved by the courts of Missouri (in which the accident occurred), and as to which the courts of other jurisdictions are sharply divided.

*95 I

Fault
The collision occurred at approximately 11:00 P.M. on July 9, 1970 approximately ½ mile south of the intersection of U.S. Highway 61 and Route V in Perry County, Missouri, when a 1967 Plymouth automobile being operated by Richard J. Erlacker was struck from the rear by a 1962 Chevrolet driven by Ronald J. Berkbuegler, an uninsured motorist.
Shortly before the accident, Erlacker was returning south on Highway 61 from a swimming party at Rock Valley outside Brewer. As he approached the scene of the accident, he turned left (east) off Highway 61 into the Hagen driveway to deliver Brenda Hagen, one of his passengers, to her home. He turned the car around and, after Brenda had left the automobile, drove up the driveway to the highway. Margie Koeper was in the front passenger seat, and another friend, Joe Hoffman, was in the rear seat. Erlacker looked in both directions and saw no cars. Joe Hoffman confirmed that all was clear on the right. Erlacker entered the highway and made a left turn into the southbound lane, accelerating to approximately 30 to 35 miles per hour. At a distance approximately 51 feet south of the Hagen driveway, Erlacker's automobile was struck from the rear by the car driven by Berkbuegler. Erlacker's car veered left across the northbound portion of the highway and came to rest against a tree, facing west approximately 25 feet from the east edge of the highway. The car driven by Berkbuegler veered to the right (west) and came to rest upside-down in a ditch approximately 207 feet from the point of impact. Margie Koeper was taken in an unconscious condition to Perry County Hospital and from there removed to St. Luke's Hospital, where she remained in a coma until her death on August 2, 1970.
U.S. Highway 61 is 20 feet wide at the point of impact. There is an 8 foot graded area on each side of the highway. The lanes are separated by a white marker. The point of impact is visible from approximately 700 feet north, after which there is a dip in the road. A car travelling south could not be seen while in the dip. The grade from the accident facing south is downhill.
Shortly prior to the accident, Ronald Berkbuegler, age 18 at the time of the accident, was returning from a motion picture theater at Brewer, travelling south on Highway 61 toward Perryville. Sheila French occupied the front passenger seat. Eddy Baer and Joyce Cissell were passengers in the back seat. Berkbuegler testified that he drove through the dip and that the next thing he knew was the impact. The front left side of his automobile struck the right rear portion of Erlacker's car. Berkbuegler testified that he did not see the Erlacker automobile before he struck it. He saw no lights. He testified that he did not put on his brakes or swerve. State Trooper Thomas Burger testified that there were tire marks from Berkbuegler's car approximately 15 feet north of the point of impact. Berkbuegler testified that he was not watching his speedometer, but believed that he was travelling at 70 miles per hour or more.
Erlacker's lights were on and in good condition. There was no traffic approaching in the northbound lane. There were 8 foot grades on both sides of the road. Erlacker had approximately 700 feet of clear visibility from the dip to the point of impact.
On the evidence adduced, the court finds that Ronald J. Berkbuegler failed to exercise the highest degree of care by having his automobile under control at the time of the accident, due to the speed at which he was travelling or his failure to observe Erlacker's automobile and avoid the collision by reducing speed or swerving his own automobile. The court finds no evidence of contributory negligence by Erlacker or any of his passengers. The court finds that the collision which resulted in death *96 to Margie Koeper was proximately caused by the negligence of Ronald J. Berkbuegler; and that Ronald J. Berkbuegler would be legally responsible to pay damages for the wrongful death of Margie Koeper resulting from such negligence.

II

Damages
Margie Koeper was 17 years of age and unmarried at the time of her death. She had completed her junior year at St. Vincent High School and would have commenced her senior year when school reopened in the Fall. During the school year she worked during off-hours as a babysitter. During the Summer she continued her babysitting work, gave music lessons, worked as a "basket girl" and lifeguard at the local swimming pool. Her father, John J. Koeper, a civil engineer 69 years of age, testified that Margie was not asked to contribute her earnings to the support of her family. She sewed most of her own clothes and was helpful around the house, performing such household chores from time to time as meal preparation, ironing and washing. Margie was an honor student, had participated in the science fair at Cape Girardeau, was a cheer leader and a student leader. Because of her ability to work with people and to motivate them, she was popular both among her fellow students and with the teachers. She was in good health at the time of the accident. Medical and funeral expenses amounted to $4,900. The measure of damages in Missouri for wrongful death is expressed in Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372 (1952), as follows:
"Aside from regard to mitigating or aggravating circumstances, the basis of recovery for the wrongful death of a child is the value of the child's services to the parents during the child's minority. Mennemeyer v. Hart, 359 Mo. 423, 221 S.W.2d 960, 962. § 537.090, R.S.Mo 1949, V.A.M.S., expressly states:
`* * * the jury may give such damages, not exceeding $15,000 as they may deem fair and just, * * *.'" 252 S.W.2d 376.
At page 377, the court further said:
"On the other hand, in many cases, as in this case and perhaps most of them, the wrongful death of a normal infant, aged, say fourteen years or less, and who had developed no special aptitude is shown: obviously, the verdict in such a case is, must be, based upon speculation and nothing more. There can be no substantial evidence as to the probable net value of his future service to his parents. In such a case, we deem it to be the expressed intent of the Legislator that the jury, not the trial or appellate court, fix the amount of the award `as they may deem fair and just'."
In a concurring opinion, Judge Dalton observed that the medical ambulance and funeral bills incurred by the parents on account of the death of their child "could be considered as a part of `the necessary injury resulting from such death.' See Missouri cases cited in Annotation 14 A.L.R.2d 485, 536."
The approved jury instruction where the measure of damages in wrongful death cases in Missouri is set forth in M.A.I. 5.03:
". . . [Y]ou must award [plaintiffs] such sum as you believe will fairly and justly compensate them for the damages which you believe plaintiffs sustained and are reasonably certain to sustain in the future as a direct result of the death of their child and which can reasonably be measured in money.
"You must not consider grief suffered by plaintiffs.
"In assessing the damages you may take into consideration any aggravating circumstances attendant upon the fatal injury."
The use of the instruction under Missouri procedural law is mandatory under Brown v. St. Louis Public Service Co. Mo., 421 S.W.2d 255, 257. As pointed *97 out in Mudd v. Quinn, 462 S.W.2d 757 (Mo.1971), the Committee's comment to M.A.I. 5.03 recognized the substantive law in prior child death cases and chose to recommend, and the Supreme Court adopted, "the broad pecuniary loss standard." The Committee further recommended that the court in an instruction conference outline to the attorneys just what damages are supported by the evidence and can properly be argued to the jury. In Mudd, an eighteen-year old girl was killed in an automobile collision. A verdict of $30,000 was returned by the jury. On appeal, appellants argued that the amount of the verdict was excessive, being the highest verdict they could find for death of a minor in Missouri. The evidence showed that Sue Mudd, age seventeen years, eight months, at her death was a senior in Hannibal High School intending to attend college following her graduation. She was a conscientious student, ranking in the upper 37% of her class, and attentive to school regulations. She was active in school activities and was physically attractive to the point she was nominated as a queen candidate on several occasions. She had a job at a jewelry store under a program where she attended school in the morning and worked in the afternoon five days a week. She also worked from 6:00 to 9:00 P.M. on Fridays and from 9:00 A. M. to 5:00 P.M. on Saturdays. She had a pleasing personality, was friendly to customers, was anxious to help, was respectful and learned quickly. She earned $941.50 from her work in the period May to December, 1967 and had earned $264.50 in 1968 prior to her death March 12. She used the money to purchase school lunches, her clothing and for other personal needs. In addition to her school and work, Sue was helpful around her home, keeping her own quarters, helping her mother with meals, sewed, knitted, did housework, yard work and helped maintain her parents' premises and automobile. She was in good health. The court also considered the ambulance charge and funeral expenses, and held that under aggravating circumstances, the verdict was not excessive.
The facts about Sue Mudd and Margie Koeper are remarkably similar, although the accident in this case was not under the aggravating circumstances considered by the jury in Mudd.
The court finds the damages sustained by plaintiff as a direct result of the negligence of third party defendant Berkbuegler to be in the sum of twenty-five thousand dollars.

III

Uninsured Motorist Liability
Richard Erlacker and his passengers, including Margie Koeper, were covered by an uninsured motorist clause of a policy issued to Erlacker's mother and father by Riverside Insurance Company. Riverside paid plaintiffs $15,000 in settlement of all claims under the policy. Of this amount, $10,000, the maximum amount under the policy, was attributed to the uninsured motorist coverage, and $5,000 was attributed to the settlement of any claim against Erlacker under the liability portion of the policy.
Margie Koeper was also covered under two policies of insurance issued to her father by defendant Farmers Insurance Companypolicies No. 1429037484 and No. 14259553384. Each policy contained identical provisions for uninsured motorist coverage. In coverage "C" of each policy, defendant Farmers agreed to pay "all sums which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured * * * *" The limits of liability were expressed to be the minimum requirements of the state motor vehicle responsibility law, which in Missouri was $10,000 per person for bodily injury.
Plaintiffs now seek recovery from defendant Farmers. Farmers contends that even if it is assumed that plaintiffs sustained more than $15,000 in damages, it is not liable to plaintiffs under the *98 uninsured motorist provisions of its insurance contracts by reason of Condition 13 contained in both policies. Condition 13 provides:
"COVERAGE C
With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorist coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."
Defendant argues that this condition applied because Mary Louise was riding in a car not owned by the insured. Defendant contends that the Riverside uninsured motorist coverage, which has been paid to plaintiffs, is "primary insurance" within the meaning of Condition 13; that since both the Farmers policy and the Riverside policy provided for a maximum of $10,000 uninsured motorist coverage, there is no "excess" of Farmers uninsured motorist coverage, and thus Farmers is not liable by virtue of Condition 13. In essence, Farmers is arguing that under the terms of both of its insurance policies, plaintiffs are limited to recovery under the Riverside uninsured motorist coverage, even though they may have suffered damages in excess of Riverside's $10,000 limit on uninsured motorist coverage. The question to be determined is whether defendant Farmers may so restrict plaintiffs' recovery to the Riverside uninsured motorist policy under the Missouri Uninsured Motorist Statute.
For purposes of this Memorandum Opinion, Condition 13 in its entirety will be described as an "other insurance" provision. The first portion of Condition 13 ["with respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorist coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, . . ."] will be referred to as the "excess clause". The remaining portion of the "other insurance" provision (". . . and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.") will be referred to as the "excess-escape" clause.
A number of courts have taken the view that the legislative purpose in requiring insurance policies to contain provision for uninsured motorist coverage "is to put the motorist injured in a collision with an uninsured vehicle in the same position as he would have been had the other motorist been properly insured." Annot., 28 A.L.R.3d 551, 556. These courts have given full effect to "excess-escape" clauses and have denied recovery to an insured covered by another uninsured motorist policy with the same amount of paper coverage as a limit, even though the sum actually available under the other policy may have been extinguished by the parties in the accident. Tindall v. Farmers Automobile Management Corporation, 83 Ill. App.2d 165, 226 N.E.2d 397; Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 N.W.2d 500 (1963); Russell v. Paulson, 18 Utah 2d 157, 417 P.2d 658 (1966).
Other courts have given limited effect to "other insurance" provisions. While not giving total effect to the "excess-escape" clauses of such provisions to preclude any recovery where other insurance with the same limit is only theoretically available, some courts have permitted insurers to set off against the maximum limit of their policies sums that have been received from other insurance companies or are actually available to the injured party from other insurers. These courts give effect to the "excess clause", taking the view that uninsured motorist statutes were designed to provide an insured with protection up *99 to minimum statutory limits. Maryland Casualty Company v. Howe, 106 N.H. 422, 213 A.2d 420 (1965); LeBlanc v. Allstate Insurance Company, 194 So.2d 791 (La.App.1967).
In M.F.A. Mutual Ins. Co. v. Wallace, 245 Ark. 230, 431 S.W.2d 742 (1968), the insurance company had issued two separate automobile policies, both of which contained uninsured motorist coverage in the amount of $10,000. Mary Ann Wallace, an insured under the terms of both policies, was killed in an accident with an uninsured automobile. Her medical bills exceeded $12,000 and the administrator of her estate sued. An "other insurance in the company" provision in both insurance policies provided that the company's total liability under the policies "shall not exceed the highest applicable limit of liability or benefit amount under any one policy." The insurer paid $10,000 under one policy, but denied liability on the other policy because of the "other insurance in the company" clause. The Supreme Court of Arkansas held the clause valid to limit the company's liability against the contention that it violated the minimum insurance provisions of the Arkansas Safety Responsibility Act. In reaching this result, the court stated that it was not the purpose of the uninsured motorist statute "to provide the insured with greater insurance protection than would have been available had the insured been injured by an operator with a policy containing the minimum statutory limits required by the Motor Vehicle Safety Responsibility Act, . . ."
In Miller v. Allstate Insurance Company, 66 Wash.2d 871, 405 P.2d 712 (1965), plaintiff was injured in an accident caused by the negligence of an uninsured motorist while riding in her brother's car. Her brother carried uninsured motorist coverage with Farmers Insurance Exchange, and plaintiff had a policy with defendant Allstate. Plaintiff was an "insured" under both policies and both policies had a limit of liability of $10,000. Plaintiff alleged damages in excess of $32,000. Farmers paid plaintiff $10,000 and she sued to recover an additional $10,000 from defendant Allstate. The Farmers policy contained a "prorata" clause as follows:
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this Uninsured Motorists Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."
Plaintiff's Allstate policy contained an "other insurance" provision which read as follows:
"This Section of the Policy does not apply:
1. to bodily injury of an insured sustained while in or upon, entering into or alighting from, any automobile, other than an owned automobile, if the owner has insurance similar to that afforded by this Section and such insurance is available to the insured; . . ."
Plaintiff contended that the "prorata" clause of the Farmers policy was so repugnant to the escape clause of the Allstate policy that the escape clause was nullified. Plaintiff contended that due to the "prorata" clause, the Farmers policy could not be considered "insurance similar to that afforded" by the Allstate policy. The court did not accept plaintiff's contention, gave effect to the Allstate "other insurance" provision and held that plaintiff could not recover from Allstate.
Other courts have held that "other insurance" provisions are invalid to deny proper damages within the limit of the applicable uninsured motorist policy. Courts invalidating such provisions do so on the ground that the statute requiring every liability policy to provide uninsured *100 motorist protection will not permit an insurer to provide in any way that the coverage of a particular policy will not apply where other insurance is also available, despite the fact that an insured may thus be put in a better position than he would have been if the other motorist were properly insured. Annot., 28 A.L.R.3d 1351, 1554. The cases that follow illustrate.
In Bryant v. State Farm Mutual Automobile Insurance Company, 205 Va. 897, 140 S.E.2d 817 (1965), plaintiff, while driving a truck owned by his father, was struck and injured by an uninsured motorist. Plaintiff brought an action against the driver and owner of the uninsured vehicle and recovered a judgment against them for $85,000. At the time of the accident, plaintiff was an insured within the uniform motorist coverage of a policy issued by State Farm to his father on the truck and under his own uninsured motorist coverage with State Farm. State Farm acknowledged liability on the policy obtained by plaintiff's father, but denied liability under plaintiff's own policy because of an "other insurance" clause, similar to the language of Condition 13. The Virginia Supreme Court of Appeals held that the language of the uninsured motorist statute was clear in requiring an insurer to pay an insured "all sums which he shall be legally entitled to recover as damages" up to certain specified limits, and that an insurer's attempt to reduce coverage through use of an "other insurance" clause was contrary to the plain terms of the statute.
The Supreme Court of Florida held that "other insurance" clauses were invalid in Florida on a certified question from the District Court of Appeals in Sellers v. United States Fidelity & Guaranty Company, 185 So.2d 689 (Fla. 1966), and held that under the Florida Uniform Motorist Statute an insurer could not, after having accepted a premium for uninsured motorist coverage, deny coverage on the ground that the insured had other similar insurance. It appeared to the court that the statute did not permit an insurer to limit its liability through "other insurance" provisions, though an insured would not be permitted to "pyramid" recoveries by recovering more than the damages actually suffered.
In Moore v. Hartford Fire Insurance Company Group, 270 N.C. 532, 155 S.E. 2d 128 (1967), the court held an "excess" clause void under the Uninsured Motorist Statute that while the statute was not intended to provide an insured with protection greater than his actual loss, neither was it intended to limit him to only one minimum recovery where he is the beneficiary of more than one endorsement. In Harleysville Mutual Casualty Company v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968), plaintiff was allowed to recover despite an "other insurance" clause, even though the vehicle which plaintiff was driving (not his own) was covered by a policy containing uninsured motorist coverage. The court said that although plaintiff may not pyramid coverages so as to recover more than his actual loss, where the loss does exceed the limits of one policy, plaintiff may proceed against any other available insurance, in accordance with the statute.
Safeco Insurance Company of America v. Robey, 399 F.2d 330 (8th Cir. 1968) was a case decided under Arkansas law. Plaintiff was injured by Marvin Lee Dobbs' negligent operation of an uninsured truck while riding in an automobile owned and operated by a Robert O'Connell. Robey qualified as an insured under the uninsured motorist coverage in policies issued to O'Connell by Northwestern Security Insurance Company and two policies issued to him by Safeco on separate vehicles. The uninsured motorist coverage in each of the three policies was limited to $10,000 for one person and $20,000 for multiple parties. In another lawsuit, Robey recovered $3,000 from Northwestern, in addition to $1,000 previously received from Northwestern, under medical expenses coverage. Plaintiff sued Safeco to recover $20,000 under the two Safeco *101 policies. Safeco contended that by virtue of an "other insurance" provision containing the language of Condition 13 in both policies, it had no uninsured motorist liability, and that if it were liable under the uninsured motorist provisions of its policies, recovery was limited to only one of its policies by virtue of an "other insurance in the company" clause contained in both policies, or proration between them. The Court of Appeals held that both policies were available to plaintiff in spite of the "other insurance in the company" provisions. (This point is discussed infra in connection with the discussion of "other insurance in the company" clauses.) Regarding the "other insurance" provisions, the Eighth Circuit held that the "excess-escape" portion of the other insurance provision was repugnant to the prorata clause of each insurance contract "under which the insurer is liable pro-rata up to the full extent of its coverage". The court also stated that the "excess-escape" clauses operate to diminish or wipe-out entirely the minimum protections sought to be afforded under the uninsured motorist acts and that uniform motorist's statutes are written to set minimum standards of protection and not maximum. In effect, the court held that Safeco could not avoid liability merely because Northwestern provided plaintiff with paper coverage up to the uninsured motorist limit of the two Safeco policies. While not permitting Safeco to use the "excess-escape" clause to completely avoid liability, the court did give effect to Safeco's "other insurance" provisions by permitting amounts actually "available" (as the word was used in Safeco's "other insurance" provisions) to plaintiff to be set off against the $20,000 coverage of the two Safeco policies. The court thus held that plaintiff could recover up to a maximum of $16,000 on these two policies. [The case was remanded however for failure to submit the issue of damages to the jury.]
In Safeco, the court permitted a setoff against the insurer's maximum liability of $20,000. It held that the insurer would be liable up to a maximum of $16,000, thus giving credit for the $4,000 plaintiff had already received. Cf., however, Treece v. Home Insurance Company, 295 F.Supp. 262 (E.D.Ark. 1969) which held that the Arkansas Supreme Court in M.F.A. Mutual Insurance Company v. Wallace, 245 Ark. 230, 431 S.W.2d 742, supra, had reached a different conclusion with respect to the Arkansas statute and would validate "other insurance" and "excess-escape" clauses even where there is only paper coverage from a primary insurer.
In Booth v. Seaboard Fire & Marine Insurance Company, 431 F.2d 212 (8th Cir. 1970), plaintiff had recovered a $23,000 judgment against an uninsured motorist. At the time of the accident, she carried uninsured motorist coverage under two policies issued by defendant, each policy providing coverage up to $20,000 per accident. Plaintiff contended that she should be able to satisfy her judgment from both uninsured motorist policies because each policy was separate and unrelated to the other. The Eighth Circuit held that under Nebraska law an insurer could use an "other insurance" provision containing the language of Condition 13 to treat itself as an excess insurer and restrict its liability to the extent of the insured's adjudicated damages. The court did not permit the insurer to limit its recovery to one policy through use of an "other insurance" clause and permitted plaintiff to recover the $23,000 from the insurer under both policies.

Missouri Law
The parties cite, and our research discloses, only two cases helpful on the question of what effect Missouri courts would give the "other insurance" provisions of Condition 13 when a primary insurer's coverage is inadequate to compensate an injured party for the damages sustained: Gordon v. Maupin, 469 S.W.2d 848 (Mo.App.1971); and Webb v. State Farm Mutual Automobile Insurance Company, 479 S.W.2d 148 (Mo.App.1972). These cases are not directly on the point, but tend to indicate *102 the position the Missouri courts might take if confronted with the facts of this case.
In Gordon v. Maupin, plaintiff was one of three guest passengers in the automobile of a Phyllis Gordon, when it was struck by an automobile negligently driven by George Maupin, an uninsured motorist. Phyllis Gordon, her two daughters and plaintiff were injured. Plaintiff's damages admittedly were $5,000. Defendant American Family Mutual Insurance Company, prior to the enactment of the present Missouri uninsured motorist statute, Section 303.030 R.S.Mo. (1969), V.A.M.S. wrote two similar automobile policies, one to plaintiff and the other to Phyllis Gordon. Each policy gave $5,000/$10,000 limitation on uninsured motorist coverage. Phyllis Gordon, her two daughters and plaintiff were "insured" under the uninsured motorist provision of Phyllis Gordon's policy. American paid Phyllis Gordon and her two daughters $8,397 and admitted liability to plaintiff for the $1,603 remainder of Phyllis Gordon's policy. Plaintiff declined to so limit her recovery and sued American for the full $5,000 under the uninsured motorist coverage of her own policy. The trial court gave plaintiff a $5,000 judgment and American appealed. On appeal, American contended that an "other insurance" provision in plaintiff's policy, which contained the language of Condition 13, limited plaintiff's recovery to the proceeds of Phyllis Gordon's policy, even though $8,397 had been used to pay the other three claimants. The court held that no more than $1,603 was "available" (as used in the "other insurance" provisions) to plaintiff under Phyllis Gordon's policy, and that plaintiff could recoup the remainder of her damages under her own policy. The court entered the judgment of $5,000 against American, but stated that if some other insurer had written the Phyllis Gordon policy, plaintiff could have recovered $1,603 from that insurer and the $3,397 remainder from defendant American.
Gordon does not directly answer the question of what Missouri courts would do when confronted with the facts in the instant case for two reasons. First, in Gordon, the accident occurred prior to the enactment of the Missouri uninsured motorist statute and the court was not concerned with the legislative intent in enacting that statute. Second, plaintiff's damages in Gordon were not in excess of $5,000, and the court was not presented with a situation in which, as here, an injured party attempted to collect more from all insurers than the maximum limit provided by his own policy and more than the statutory minimum required insurance. In other words, it was not forced to choose between enforcing or invalidating in whole or in part the "excess-escape" clause. In the course of its opinion, however, the court reviewed Tindall v. Farmers Automobile Management Corporation, supra, and specifically rejected the premise upon which the result in Tindall was reached, i. e. that the plaintiffs were entitled to no greater protection than they would have had if the uninsured motorist had carried the minimum requirements of automobile insurance.
While giving no effect to the literal language of the "excess-escape" clause, the court does not say that the "excess" portion of the "other insurance" provision should be given no effect. In fact, the court's language indicates that it would give effect to the "excess" clause similar to that given by the Eighth Circuit in Safeco.
At 469 S.W.2d 848, 851, the court stated:
"Next, defendant cites what have been called `stacking' cases. We agree with defendant's premise but hold this is not a `stacking' case. In the cited cases the injured guest passenger first recovered under his host driver's uninsured motorist coverage, and then sought to recover damages for the same injuries under his own uninsured motorist policy. Such double recovery has been properly denied because `other insurance' was actually available to and recovered by the plaintiff under his host driver's uninsured motorist coverage. *103 The other-insurance-available clause in the plaintiff's own policy clearly precludes such `stacking' of coverage. These cases do not help American here because plaintiff Margorie Gordon is not `stacking' her claim; she has received nothing under the Phyllis Gordon policy, and is seeking recovery only under her own policy."
In Webb v. State Farm Mutual Automobile Insurance Company, supra, the Missouri Court of Appeals for the Kansas City District held that an insurer may not lawfully reduce benefits owing under a policy's uninsured motorist coverage by payments made under the separate medical expenses coverage of the policy. At pp. 151-152 of 479 S.W.2d of its opinion, the court states:
"Since 1967, when the uninsured motorist law was enacted, the minimum limits of any uninsured motorist coverage issued in this state have been required to conform to the minimum limits of $10,000 per person and $20,000 per occurrence prescribed for automobile liability policies under the financial responsibility law. These terms of the uninsured motorist statute became a part of each policy containing such coverage including the one issued by defendant under which plaintiffs and intervenors claim as insureds. It is the public policy of Missouri established by the uninsured motorist statute, then, that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law. (In accord: Tuggle v. Government Employees Insurance Co., (Fla.) 207 So. 2d 674, 675 [1]; Bacchus v. Farmers Insurance Group Exchange, 106 Ariz. 280, 475 P.2d 264, 267 [1, 2]; Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, 139 [11]; all of which construe uninsured motorist and financial responsibility laws which are substantially the same as our own.)"
The "public policy" behind the Missouri uninsured motorist statute as declared by the Kansas City Court of Appeals, supra, indicates that the court would permit a secondary insurer to treat itself as an excess insurer and set off other liability payments against its own liability (without limiting coverage below the minimum statutory limits), even though a policy provision authorizing a set-off of payments under a separate medical payments coverage would be void.

Validity of "Other Insurance in the Company" Clause
The uninsured motorist coverage of the two policies issued by defendant contain the following clause:
"8. OTHER INSURANCE IN THE COMPANY
With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy."
Since the court has found the total damages under the uninsured motorist provisions to be $25,000, reduced by $15,000 received from Riverside Insurance Company, or a total of $10,000, we need not consider here defendant's argument that Condition 8 limits its liability to the higher of the limits of its two policies, or $10,000.[1]

IV

Medical Expense Coverage
Medical expense coverage was provided in defendant's policies XXXXXXXXXX *104 and XXXXXXXXXX up to $2,000 per person and $1,000 per person respectively. Medical expenses were $4,900. Defendant has paid $2,000 to plaintiffs under policy XXXXXXXXXX and denies liability under policy XXXXXXXXXX. These questions are presented on this issue: (1) does Condition 8, supra, operate to reduce pro tanto the coverage provided by the uninsured motorist clause?; (2) if the liability, including medical expenses, is less than the uninsured motorist coverage, may defendant set off the medical expense payments against its liability under the uninsured motorist provision?; and (3) does Condition 8 preclude recovery of any amount under policy XXXXXXXXXX in view of the payment of $2,000 under policy XXXXXXXXXX.
The first question has been answered by the recent decision of Webb v. State Farm Mutual Automobile Insurance Company, supra, which held that the public policy expressed in V.A.M.S. § 379.203 precluded any "impairment of the prescribed minimum uninsured motorist coverage by another policy provision attempting to limit liability thereunder." 479 S.W.2d 148, 154 (Mo.App. 1972). Therefore, the $2,000 paid under policy XXXXXXXXXX will not reduce the uninsured motorist coverage under the policies.
The second question was not expressly decided by Webb, supra, because the stipulated damages in Webb were in excess of the combined medical expense and uninsured motorist coverages. It nonetheless intimates the result in distinguishing Hamilton v. Slover, 440 S. W.2d 947 (Mo.1969), in which the court refused to permit a double recovery under both the medical and liability portions of the tort-feasor's insurance contract. Here, as in Webb, the defendant insurer is not in the role of tortfeasor. The court there said:
"As to the uninsured motorist coverage, the parties are in the relationship of insureds and insurer. As to the medical payments coverage, the insurer is not in the position of a tortfeasor, but is called upon to honor a constructual obligation which arises without regard to fault. In addition to its general obligation to indemnify against damage to others, the defendant insurer made two separate promises, each supported by an independent consideration. It agreed to pay the amount due insured from an uninsured driver and medical expenses of the occupants up to the designated limits. We hold it to each of these promises, otherwise the insurer would have the windfall of premiums collected and be unjustly enriched thereby." 479 S.W.2d 148, 154.
Expressed another way, had the tortfeasor been sued directly, he would not have been permitted to offset medical payments made under plaintiff's own policy, applying the collateral source doctrine, since the tortfeasor had not supplied the fund. An insurer against uninsured motorist liability stands in the shoes of the tortfeasor. Sims v. National Casualty Co., 171 So.2d 399 (Fla. App.1965). Accordingly, the $2,000 previously paid under the medical expense coverage provisions may not be used to offset the liability of defendant under its uninsured motorist clause.
The third question, the effect of Condition 8 upon the separate medical expense coverages in the two policies, can be answered independently of the public policy considerations in Webb, supra. There is no statute which precludes a contractual provision limiting recovery of medical expense to the highest applicable limit of liability under any one such policy. Kisling v. MFA Mutual Insurance Company, 399 S.W.2d 245, 254 (Mo.App.1966); Northwestern Mutual Insurance Company v. Haglund, 387 S. W.2d 230, 232 (Mo.App.1965).
The limitation was a part of the contracts and the court therefore finds and concludes that plaintiff is not entitled to enforce the $1,000 medical expense payment under policy XXXXXXXXXX.

V

Judgment to be Entered
In summary, this court concludes that the Supreme Court of Missouri would, *105 on the facts presented here, hold under Missouri law (1) that defendant is entitled to setoff against its liability under the uninsured motorist coverage as "other insurance" the $15,000 paid to plaintiffs by Riverside Insurance Company on account of the accident but is liable for the balance of the damages up to the limit of its coverage; (2) that defendant may not offset the medical expense payment of $2,000 paid under the separate coverage provision of one of its contracts; and (3) that defendant has no liability, by reason of Condition 8, to pay under the medical expense provision of its other contract, which had a limit of $1,000.
The foregoing Memorandum Opinion constitutes the court's findings of fact and conclusions of law.
Accordingly, the Clerk is directed to enter judgment in favor of plaintiffs and against defendant in the sum of $10,000.
Costs are assessed against defendant.
So ordered.
NOTES
[1] For a discussion of this legal issue where the damages exceed the higher of the limits of two policies in the same company, see Opinion filed this date in a companion case, French, et al v. Farmers Insurance Company, 354 F.Supp. 105 (E.D.Mo.1972).