431 P.2d 917

**Richard A. KRAFT, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

**No. 2 CA–CIV 269.**

Court of Appeals of Arizona.

Sept. 13, 1967.

Opinion Modified, Rehearing Denied Oct. 26, 1967.

See 6 Ariz.App. 326, 432 P.2d 470.

Miller & Pitt, by David J. Leonard, Tucson, for appellant.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellee.

HATHAWAY, Chief Judge.

Richard A. Kraft sought a declaratory judgment to have Allstate Insurance Company declared liable to him under the uninsured motorist provision of an automobile liability policy issued to him by that company. The superior court trial was to the court, sitting without a jury, on stipulated facts. Judgment was granted the insurance company declaring it to be free of liability to Kraft.

On January 13, 1964, Kraft had sustained bodily injuries in an automobile collision while he was a passenger in an automobile driven by Ralph R. Ramsey. Ramsey's vehicle, while stopped at an intersection, was struck head-on by an automobile owned and driven by Willard Cook, an uninsured motorist. Ramsey had an automobile liability policy with Travelers Insurance Company providing uninsured motorist protection with the limitation that a party was not entitled to uninsured motorist benefits if he had received the maximum allowed by the policy under the liability coverage. Kraft's Allstate Insurance Company policy specified that the uninsured motorist coverage did not apply:

"To bodily injury of an insured sustained while in or upon, entering into or alighting from, any automobile, other than an owned automobile, *if the owner has insurance similar to that afforded by this Section and such insurance is available to the insured; * * *.*" (Emphasis added.)

Kraft made a claim against Ramsey and his insurer, Travelers Insurance Company, for damages suffered from Ramsey's alleged negligent operation of his automobile. Kraft contended that his injuries were caused by the combined negligence of Cook and Ramsey. Travelers Insurance Company, recognizing a possible exposure to liability under Ramsey's personal liability coverage, paid Kraft $10,000 under that portion of the policy.[1] For this payment, Kraft and his wife executed a "covenant not to sue or prosecute further," reserving all rights against Allstate Insurance Company and Cook, the uninsured motorist.

The superior court resolved the issue of coverage in favor of Allstate Insurance

---

1. Mr. Lobaugh, Travelers insurance adjuster, stated in his deposition, in response to a question concerning Ramsey's alleged negligence:

"A Well, here again, as I recall, the contentions set forth by the other claimant Cook, which I believe we had more than one signed statement—I took one personally, and I believe Mr. Miller or someone for him took a statement, and in this statement he contended that the accident came about because he was blinded by the headlights of Mr. Ramsey. He stated as he came down the highway, the high beams were on and he was blinded. He flashed his lights. He commented to his wife. Of course his wife was killed in the accident—that he flashed about twice or more than one time to lower these beams, and it wasn't done, and as he came into the curve he couldn't properly negotiate it, and he collided with the Ramsey-Kraft vehicle.

After this contention I had our San Francisco—correction—our Sacramento office check with Ramsey to see if he could refute this contention made by Cook. As I recall they questioned him closely on this matter and he couldn't refute it. I, before negotiating this matter with Mr. Kraft and Howsare, and Miller took a statement from Mr. Kraft and he also couldn't refute this contention that he [Cook] was blinded by the high beam shining into Mr. Cook's eyes. therefore this certainly raised the question of negligence on Ramsey's part and of course, because of this, and particularly in case of a guest passenger, we felt that we best handle the file as a case of liability on the part of Ramsey and make our settlement under that particular coverage as opposed to making a settlement under the uninsured motorists' coverage, which was also available."

and:

"A To discuss it very candidly, obviously there is a weighted amount of negligence on Cook's part. This is grossly obvious, but as I understand these legal questions, not being a lawyer, I might have some misunderstanding of it. It is my understanding in the law of negligence, torts, and so forth, that if Ramsey were in fact guilty of one percent of negligence and Cook were guilty of ninety-nine percent, that a jury still could find Mr. Ramsey guilty of negligence and he would be accountable for the damages. Therefore we protected him against this small contingency."

Company for the reason that Ramsey had insurance:

"* * * similar to that afforded by Coverage S [Allstate policy] * * * and such insurance was available to the plaintiff, Richard A. Kraft, at the time of the collision and became unavailable to the plaintiff, Richard A. Kraft, as the result of his negotiations with the Travelers Indemnity Company and the execution and delivery to the Travelers Indemnity Company of a 'COVENANT NOT TO SUE OR PROSECUTE FURTHER' by the plaintiff, Richard A. Kraft, and his wife, Patricia Kraft. * * *"

■ The facts being undisputed, we are at liberty to draw our own legal conclusions from them. Combustion Engineering, Inc. v. Arizona State Tax Commission, 91 Ariz. 253, 371 P.2d 879 (1962); Arizona State Tax Commission v. First Bank Building Corp., 5 Ariz.App. 594, 429 P.2d 481 (1967). Allstate Insurance Company contends that Ramsey's insurance policy was "other insurance" which relieved it of liability under the terms of its policy. The exclusion provision of the Allstate Insurance Company policy requiring (1) existence of "other insurance" and (2) that such other insurance be available, poses the question: "Was such other insurance 'available'?" Critical to the determination of this question is the provision of the Travelers Insurance Company policy which we have previously paraphrased, limiting liability under the uninsured motorist protection coverage as follows:

"(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is insured under this Part shall be reduced by

"1. All sums paid on account of such bodily injury by or on behalf of

"(i) the owner or operator of the uninsured automobile and

"(ii) any other person or organization jointly or severally liable together with such owner or operator for

such bodily injury including all sums paid under *Coverage A*. * * *"

(Emphasis added.)

It is apparent that Travelers Insurance Company was relieved under the uninsured motorist coverage provision to the extent that the policy limits had been expended to pay sums "* * * which the insured shall become legally obligated as damages. * * *"

We must determine whether "other similar insurance available" means insurance proceeds that an insured may collect and spend, or simply, as Allstate Insurance Company contends, "other" insurance existing on paper. Or, stated another way, does the word "available" mean actually available to the insured, or, as found by the trial court, available at the time of the accident?

■ "Uninsured motorist" insurance coverage is designed to close the gap in protection afforded under Financial Responsibility Acts which do not protect those injured by financially irresponsible motorists and hit-and-run drivers, Maryland Casualty Company v. Howe, 106 N.H. 422, 213 A. 2d 420, 421 (1965); 12 Couch on Insurance 2d § 45:623, and has been made compulsory in a number of states. In 1965, the Arizona legislature enacted such legislation. See A.R.S. § 20–259.01, Added Laws 1965, Ch. 34, Sec. 1. The appellant concedes that this statute is inapplicable because its effective date was subsequent to the issuance of the Allstate policy. He points out that "other insurance" provisions have been held void in several jurisdictions. See Vernon v. Harleysville Mutual Casualty Co., 244 S.C. 152, 135 S.E.2d 841 (1964); Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965); Sellers v. United States Fidelity and Guaranty Co., Fla., 185 So.2d 689 (1966). He admits, however, and we agree, that these decisions are not controlling here, as they were based upon the finding that the "other insurance" provisions of

the policies were contrary to their particular state statutes.

In Travelers Indemnity Company v. Wells, 209 F.Supp. 784 (D.C.1962),[2] the court was confronted with the same problem—construing the word "available." There, Travelers' uninsured motorist coverage contained an excess-type [3] "other insurance" provision and Travelers contended that "available" meant "available at the time of the accident." However, the other insurance, when Travelers' insureds asserted their claims, was exhausted by payment to others injured in the same accident.[4]

The federal court, in construing the phraseology of the Travelers' policy stated:

"In construing this phrase, all ambiguities must be resolved in favor of the insured and against the insurer. This Court must decide whether the phrase is to be narrowly construed in such a way as to include only those claimants who race fastest in getting suits filed and judgments thereon up to $30,000.00, or whether the proper interpretation of the phrase would include the Wellses, who, within the statutory time permitted by law, filed their suit for a judicial determination of their right of recovery only to find their insurer claiming that since there were funds 'available' at the time of the accident, there are not any available now to pay for their injuries. This kind of legal double talk must be difficult to understand for a seriously injured insured who has paid a premium for

insurance coverage against the very type of injury he has suffered." 209 F.Supp. at 790.

In holding that the word "available" must be construed to mean "actually available for the use of the injured party," the court relied on its interpretation of the Virginia Uninsured Motorist Statute. It pointed out that in the light of the public policy underlying the statute, i. e., compensation to an injured party who was not at fault, this construction was mandated.

■ This construction is reasonable, notwithstanding absence of a statute, where an insured has paid an additional premium to protect himself under such circumstances. To permit the insurance company which received the additional premium to avoid liability when its insured *in fact* cannot collect for his loss under the "other insurance" shocks the conscience of this court.

Kraft's settlement with Travelers under the coverage for legal liability of its named insured, Ramsey, exhausted the policy limits and rendered unavailable the uninsured motorist coverage therein provided. Kraft should not be required to forfeit coverage against Ramsey to accommodate his insurer. To limit his remedy against the uninsured motorist, Cook, to the Travelers policy effectuates a forfeiture of uninsured motorist coverage. Allstate charged a premium for the coverage; it cannot be permitted to vanish as the pea in the shell game. We hold that other insurance was not available to Kraft and Allstate's coverage for uninsured motorist protection remains.

2. This decision of the United States District Court was subsequently reversed by the Fourth Circuit Court of Appeals, 316 F.2d 770 (1963). However, in view of the fact that the Supreme Court of Virginia, in Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1966) subsequently overruled the Fourth Circuit holding, we are not inclined to consider ourselves bound by the Fourth Circuit decision.

3. The insurance applied "only as excess insurance over any other similar insurance available."

4. A car owned an operated by Floyd Smith was struck by an uninsured motorist. Smith had uninsured motorist coverage which included all the passengers as insureds. Two of the passengers were also insureds under the Travelers' policy. The policy limits of the Smith policy was exhausted by payment to the Smiths, and Travlers' insureds received nothing thereunder.

The judgment of the trial court is reversed with directions to enter judgment in appellant's favor consistent with this opinion.

MOLLOY, J., and LAWRENCE HOWARD, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge LAWRENCE HOWARD was called to sit in his stead and participate in the determination of this decision.