**Kenneth HOFFMAN**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION.**

**Civ. No. N–82–337 (PCD).**

United States District Court,
D. Connecticut.

Oct. 15, 1987.

Mark B. Seiger, George D. Royster, Jr., Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for plaintiff.

Edmund T. Curran, Regnier, Taylor, Curran & Lagenbach, Hartford, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

On July 19, 1980, plaintiff and his wife, now deceased and for whose estate he is the executor, were passengers in an automobile owned by Richard Whelan, a Connecticut resident, when it was in a collision in Connecticut with an automobile owned by Richard Nowakowski. The accident resulted in numerous personal injuries and the death of Mrs. Hoffman.[1]

Nowakowski had liability insurance of $20,000 per person and $40,000 per accident with Travelers Insurance Company ("Travelers"). Whelan had underinsured motorist insurance coverage of $50,000 per person and $100,000 per accident with Hanover Insurance Company ("Hanover") on two vehicles. Thus, under Connecticut law, that coverage was stacked so as to provide coverage of $100,000 per person and $200,000 per accident. *Allstate Ins. Co. v. Ferrante,* 201 Conn. 478, 518 A.2d 373 (1986); *Nationwide Ins. Co. v. Gode,* 187 Conn. 386, 446 A.2d 1059 (1982). The claims of plaintiff, the estate, and Whelan were settled out of the two policies.[2] The Hanover policy does not appear to have been stacked for purposes of the settlement. Plaintiff received $5393.28 from Traveler's and $8300.79 from Hanover.

Plaintiff, a Maryland resident, for himself and his wife's estate instituted this action seeking the benefit of the "Excess Coverage" provision of the insurance policy on their two automobiles. Defendant's policy provided underinsured motorist coverage of $300,000 per person and $500,000 per accident.[3]

Defendant moves for summary judgment on the following issues: Should defendant's obligation under plaintiff's policy be reduced by (1) the amounts paid to him by the liability insurer (Travelers) and the primary underinsured motorist insurer (Hanover); (2) the additional $50,000 underinsured motorist coverage limits, as stacked, in the Hanover policy; and (3) the difference between the unstacked Hanover uninsured policy limits and the amount plaintiff recovered from Hanover?

### 1. *Reduction By Amounts Paid the Liability and Primary Insurers*

Plaintiff agrees that defendant's policy limits should be reduced by the $5393.28 he

1. Defendant's motion was originally directed to both Kenneth Hoffman in his individual capacity and as Executor of the Estate of Sandra Hoffman. Subsequent to the filing of that motion, Kenneth Hoffman as Executor of the Estate of Sandra Hoffman settled with defendant. Accordingly, this ruling will solely decide defendant's motion as it applies to Kenneth Hoffman in his individual capacity.

2. It is not clear from the record whether the Hanover policy limits were exhausted either on a per/person or per/accident basis nor to what extent Whelan recovered under that policy.

3. The question of whether Maryland would recognize stacking in this situation was certified to the Maryland Court of Appeals which ruled against stacking. *Hoffman v. United Serv. Automobile Ass'n,* 309 Md. 167, 522 A.2d 1320 (1987).

received from Travelers and the $8300.79 from Hanover, a total $13,694.07. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 7. Accordingly, summary judgment will enter on this issue. Local Rule 9(a).

### 2. *Reduction By Policy Limits in the Stacked Primary Insurer's Policy*

Defendant claims that its policy limit[4] should be reduced not only by the $13,694.07, but also by the $50,000 additional per person coverage available under the stacked Hanover policy. Defendant's liability to plaintiff is governed by its policy which provides:

> [w]ith respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as *excess insurance* over any other similar insurance *available to such insured and applicable to such vehicle as primary insurance*, and this insurance shall then apply only in the amounts by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Contract at § VI, ¶ 6 (emphasis added).

### *Choice of Law*

A federal court sitting in diversity must apply the applicable choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Connecticut choice-of-law rules, the validity and construction of an insurance contract are usually determined by the law of the place where the contract was made. *Whitfield v. Empire Mut. Ins. Co.*, 167 Conn. 499,

505–06, 356 A.2d 139 (1975); *Breen v. Aetna Cas. & Sur. Co.*, 153 Conn. 633, 637, 220 A.2d 254 (1966).[5] Here, it has already been determined that defendant's insurance contract must be construed under the law of Maryland. Ruling on Pending Motions at 5 (Nov. 13, 1984). The interpretation of the "excess insurance" provision poses a threshold question: What does the term "available" mean under the law of Maryland? Does it mean amounts *actually* received from an insurer or amounts that could, *potentially*, have been obtained from an insurer? If it is the latter, then the *amount* of available insurance must be determined. To determine what insurance was available under the Hanover policy requires reference to the law of Connecticut, which governs the Hanover policy, the "other similar insurance" as to which defendant claims its policy is excess.[6]

### *Definition of "Available"*[7]

■ "Insurance policies, like other forms of contracts, are interpreted as a reasonable man would understand them. The terms of policies are construed in their plain, ordinary, and popular sense. This policy has been referred to as the 'principle of reasonable expectations.'" Appleman, 6B *Insurance Law and Practice*, § 4254 at 25 (1979 & Supp.1987) (citations omitted). The word "available" is ambiguous and, therefore, must be construed against the insurer. *Id.* ("Ambiguous provisions in insurance policies must be construed against the insurer."). The word "available" could mean anything from "in hand" or "actually received" to "within reach" or "conceivably obtainable." Webster's Third World New International Dictionary at 150 (1981) defines available as what is accessi-

---

**4.** The Estate of Sandra Hoffman received $250,000 in settlement from defendant's policy. There remains $250,000 subject to Kenneth Hoffman's claim.

**5.** Connecticut would adopt the Restatement II approach to choice-of-law problems in the event application of the vested rights approach would yield an arbitrary and capricious result. *Economu v. Borg-Warner*, 652 F.Supp. 1242, 1246–48 (D.Conn.), *aff'd*, 829 F.2d 311 (2d Cir. Sept. 16, 1987). Under either approach, Maryland law would apply to plaintiff's contract with defendant.

**6.** By referencing the availability of other insurance, which would cover the insured as a passenger in a vehicle other than his own, § VI ¶ 6 of defendant's contract implicitly recognizes that the laws of states other than Maryland might affect the amount of "other similar insurance available" to the insured.

**7.** Although Maryland has recognized the validity of the excess coverage clause, the parties have not provided any Maryland authority construing this term nor has the court found any.

ble or obtainable. What is available, or accessible or obtainable, can range widely depending on what conduct or events are necessary to bring the tangible object into possession or the intangible objective to fruition. As the extent of those events or conduct is not defined, the word is ambiguous. A number of courts have found that, because of this ambiguity, the word should be construed strictly against the insurer. *See Benzer v. Iowa Mut. Tornado Ins. Ass'n.*, 216 N.W.2d 385 (Iowa 1974); *Safeco v. Ins. Co. of America v. Robey*, 399 F.2d 330 (8th Cir.1968) (applying Arizona law); *Kraft v. Allstate Ins. Co.*, 6 Ariz.App. 276, 431 P.2d 917, 920 (1967) (Arizona); *Gordon v. Maupin*, 469 S.W.2d 848, 850 (St.L.Mo. App.1971) (Missouri) (all construing similar provisions to mean what was *actually* available).[8] The seemingly better and more reasoned approach would be to construe "available" to mean that which is reasonably available, *viz*, available with a reasonable effort, passage of time, or occurrence of events. Had the parties intended a construction[9] which followed *Benzer* and its progeny, the words "recovered" or "received in hand" would have been used. The word "available," however, permits, and dictates, that the reference was to funds which were obtainable or within the legal reach of the insured. Construing the term in this manner allows the interest of both the insured and the insurer to be protected. The purpose of excess coverage is to provide additional coverage when the coverage provided by the primary policies does not fully compensate an insured for his loss. Obviously, this purpose is emasculated if the insured can bypass the coverage provided by the primary carrier and seek relief from the excess carrier or if the primary carrier is allowed to circumvent its obligations by settling with the victim for less than his full damages, without exhausting its coverage, only to pass the burden of the remainder of the full damages to the excess carrier. The word "excess" loses its meaning under either scenario. Appleman, 8A *Insurance Law and Practice*, § 4909 at 390–94 (1979 & Supp.1987). Thus, by construing the word "available" to mean that which is reasonably available ensures that the excess insurer's expectations are protected, i.e., that its coverage will truly be excess. On the other hand, the insured expected excess coverage and that expectation is protected by requiring him only to do that which is reasonable. The insured's protection is preserved in the excess carrier's recited coverage which is available after other available coverage is exhausted. His protection is lost only to the extent he waives or fails unreasonably to effectuate a claim to the primary coverage. An insured is thus required to do only what is reasonable to obtain the available, primary coverage. If, after reasonable efforts, there is no other coverage available, then the excess coverage can be tapped as was clearly what both parties could and should have contemplated.

It is beyond dispute that under Connecticut law, the Hanover policy could have been stacked and that plaintiff could have sought all or a portion of the extended policy limits. *Ferrante*, 201 Conn. 478, 518 A.2d 373. This rule was not decided until 1986 and thus at the time of plaintiff's accident and the resolution of his claim against Hanover it can be said to have been in doubt. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 3, citing *Shea v. AIU Ins. Co.*, Conn. Law Trib. at 16 (Nov. 19, 1979); *Pompeo Carta v. Transamerica Ins. Co.*, Arbitrator's Decision No. 12 20 0079 83 (June 19, 1985). Nevertheless, in *Ferrante* the court had little trouble in allowing stacking in favor of a passenger against all of the insurer's arguments. Hoffman can-

---

**8.** Although the Connecticut Supreme Court cited these cases with approval, *Fidelity & Cas. Co. v. Darrow*, 161 Conn. 169, 180–81, 286 A.2d 288 (1971), its decision was dicta as to this point and it is not clear as to how it would decide this question if confronted with facts such as those involved herein.

**9.** It is fully realized that with a form policy, the parties do not negotiate the contract's language and thus a policy is to be construed as meaning what the parties reasonably could have understood the language to mean, giving the benefit of the doubt to the insured.

not argue that his failure to seek an adjudication of his claim to coverage under the stacked Hanover policy was reasonable. The Hanover coverage was available by the simple expediency of bringing a lawsuit. If that suit was brought and failed, then plaintiff would have established that such coverage was not available and could have resorted to defendant's coverage without being subject to the defense that other insurance was available.

■ Absent such a showing of reasonableness and given the decision in *Ferrante*, defendant's coverage must be reduced by the amount of the additional coverage that was available to plaintiff under the stacked Hanover policy—$50,000. Although the claims of Mrs. Hoffman and Whelan might have impinged on plaintiff's sole claim to that additional $50,000, plaintiff has not established that fact in the record. Absent such a showing, defendants excess coverage will be reduced by $50,000, the other similar available insurance.

### 3. *Reduction By Policy Limits for the Unstacked Primary Insurer's Policy*

Resolution of this issue requires an analysis under Maryland law of the language

> and this insurance shall then apply only in the amounts by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Contract, § VI ¶ 6.

Defendant argues that this case is controlled by *Yarmuth v. Government Employees Ins. Co.*, 286 Md. 256, 407 A.2d 315 (Md.1979), where the Maryland Court of Appeals held that an insurer could include a provision in a policy which prohibited the recovery of uninsured motorist benefits where the insured had already collected uninsured motorist benefits from a primary policy. *Yarmouth*, however, did not consider an excess insurance clause like the

one in issue here and its applicability to this case is questionable.

■ Assuming that Whelan, plaintiff, and his wife were all injured to the same degree, then each would have been entitled to coverage of $33,333.33 from Hanover. However, in this case, as is almost always the case, all claims were not equal. It is assumed that the different amounts received by the three claimants reflected the severity of the injury that each suffered.[10] As such, as to plaintiff, the applicable limit was the amount of insurance he actually received because that was all that was available to him. Had plaintiff been the sole party injured and received, via a settlement, only a fraction of the $50,000 coverage provided by the primary carrier, then defendant might be justified in claiming a reduction of its excess coverage by the amount of insurance he could have had but did not receive, i.e., the difference between what he actually received and what he argues was the full value of his claim. *Cf.* Appleman, 8A *Insurance Law and Practice*, § 4909 at 390–93 (1979 & Supp.1987), citing *U.S. Fire Ins. Co. v. Lay*, 577 F.2d 421 (7th Cir.1978); *American Mfr's Mut. Ins. Co. v. Horn*, 353 So.2d 565 (Fla.App. 1977); *Bettenbug v. Employers Liability Assurance Co., Ltd.*, 350 F.Supp. 873 (D.Minn.1972) (All noting that, where insured and primary carrier settle for an amount below the limits of the primary carrier's policy, the excess carrier is liable for amounts only in excess of the primary insurance limits, as otherwise the primary carrier would have no incentive "to defend in good faith or to discharge its duty ... to represent the interest of the excess carrier." *Lay*, 577 F.2d at 423 (citations omitted). That is not the case here, however. Plaintiff received from Hanover all that he could have gotten in view of the fact that he had to share the policy, $100,000, with two other parties. That amount represented what all claims were limited to within the unstacked coverage. To read the provision as defendant suggests would be to apply a meaning to an ambiguous phrase

---

**10.** This analysis assumes that the unstacked Hanover per accident limit ($100,000) was exhausted. Defendant makes no claim or showing to the contrary, as it must, if it is to prevail in the showing of other available insurance.

that was not within the reasonable expectations of the insured. Such is not countenanced under the law. Appleman, 6B *Insurance law and Practice,* § 4254 at 25 (1979 & Supp.1987).

Accordingly, defendant's motion is granted in part and denied in part. Plaintiff's potential entitlement under defendant's underinsured coverage is limited to $186,-305.93 ($250,000—the $500,000 per accident less the $250,000 by which defendant's coverage was paid or credited against the claim of the Estate of Mrs. Hoffman—minus $5393.28 received from Travelers, $8300.79 received from Hanover, and $50,-000 representing the amount available under the stacked Hanover policy).

SO ORDERED.