AUTO-OWNERS INSURANCE COMPANY v LEEFERS

Docket Nos. 152342, 152648. Submitted June 3, 1993, at Lansing. Decided December 20, 1993, at 9:00 A.M. Leave to appeal sought.

Auto-Owners Insurance Company brought an action in the Ingham Circuit Court against Brenton Leefers, as personal representative of the estate of Phyllis Ann Leefers, deceased, Jauron K. Leefers, and Keysha D. Cash, seeking a declaration concerning the applicability of underinsured motorist coverage of two insurance policies issued by the plaintiff. Phyllis Leefers was killed and Jauron Leefers and Keysha Cash were seriously injured when the vehicle owned and driven by Phyllis Leefers and in which Jauron and Keysha were passengers was struck by a vehicle operated by Josh Prather. The sole cause of the accident was Prather's negligence, and Prather's insurer settled with the estate and the survivors for the coverage limits of the Prather policy. The Leefers vehicle was insured by the plaintiff under a policy containing underinsured motorist coverage with limits of $300,000 a person and $300,000 an occurrence. Because the damages of the defendants exceeded their recoveries under the Prather policy, they filed claims under the underinsured motorist coverage of the Leefers policy. Keysha Cash also filed a claim under the underinsured motorist coverage of a policy issued by the plaintiff to Arthur Hall, her grandfather with whom she resided. The Hall policy had the same coverage limits as the Leefers policy and contained a provision that it did not apply if injury to its insured occurred while in a nonowned vehicle if the owner of that vehicle had similar insurance coverage that was available to the insured. The plaintiff denied coverage under the Hall policy and brought this action to determine its liability under the two policies, offering to submit $250,000 to the court, the difference between the coverage limits of the Leefers policy and the individual coverage limits of the Prather policy. The court, Peter D. Houk, J., granted summary disposition for the plaintiff, ordered the

REFERENCES
Am Jur 2d, Automobile Insurance §§ 293 *et seq.*, 322.
See ALR Index under Automobile Insurance.

plaintiff to remit $250,000 to the court for disbursement to the defendants, and enjoined Cash from pursuing a suit for coverage under the Hall policy. Cash appealed, and Brenton Leefers and Jauron Leefers appealed. The appeals were consolidated.

The Court of Appeals *held:*

The term "available" as used in the exclusion of the Hall policy must be construed to mean coverage that is actually available, accessible, or reasonably available, as opposed to being theoretically or hypothetically available. Because Cash failed to establish that the underinsured motorist benefits under the Leefers policy were not actually or reasonably available to her under the circumstances of this case, the coverage afforded by the Leefers policy was of the type intended by the language in the exclusion clause of the Hall policy. Because there is nothing in either of the policies that guarantees each insured full availability of $300,000 in benefits, the fact that Cash is entitled to a prorated share under the Leefers policy satisfies the exclusion in the Hall policy. The trial court properly granted summary disposition for the plaintiff and enjoined Cash from seeking recovery under the Hall policy.

· Affirmed.

INSURANCE — WORDS AND PHRASES — "AVAILABLE" — AUTOMOBILES — UNDERINSURED MOTORIST INSURANCE — EXCLUSIONS.

A provision of an insurance policy that has underinsured motorist coverage that excludes that coverage if there is other similar coverage available to the insured is applicable only where the similar coverage is actually or reasonably available to the insured; the fact that the coverage of a similar policy with the same limits of liability for an occurrence may have to be divided among several claimants does not establish that similar coverage is not actually or reasonably available.

*Reeves & Jones, P.C.* (by *Donald L. Jones*), for the plaintiff.

*Hardy, Lewis, Pollard & Page, P.C.* (by *Thomas Hardy*), for Brenton Leefers and Jauron Leefers.

*Abood, Abood & Rheaume, P.C.* (by *David P. Pasichnyk*), for Keysha Cash.

Before: REILLY, P.J., and SAWYER and P. J. CLULO,* JJ.

P. J. CLULO, J. In Docket No. 152342, defendant Keysha Cash appeals an April 30, 1992, order of summary disposition for the plaintiff in its action for declaratory relief whereby plaintiff's complaint for interpleader was granted and plaintiff was ordered to remit the sum of $250,000 to the court for disbursement to defendants as compensation for injuries they suffered in an automobile accident. The order further enjoined Cash from pursuing a suit for coverage under her grandfather's insurance policy. In Docket No. 152648, defendant Brenton Leefers appeals from the same order. We affirm.

On January 27, 1990, Phyllis Leefers, now deceased, was operating her motor vehicle in which defendants Jauron Leefers and Keysha Cash were passengers. The vehicle was struck by an automobile owned and operated by Josh Prather. Phyllis Leefers died as a result of injuries she sustained in the accident, while both Jauron Leefers and Keysha Cash sustained serious injuries. It is undisputed that the sole cause of the accident was Prather's negligence.

Prather had a policy of liability insurance with State Farm Insurance Company that limited coverage to $50,000 a person and $100,000 an occurrence. The proceeds from the policy were distributed as follows: the estate of Phyllis Leefers received $50,000, Jauron Leefers received $10,000, and Keysha Cash received $40,000. It is undisputed that the Prather policy was inadequate to cover the damages of each defendant, requiring defendants to make claims under other insurance policies. Phyllis Leefers' policy (hereinafter the

* Circuit judge, sitting on the Court of Appeals by assignment.

Leefers policy), issued by plaintiff, contained an underinsurance clause that limited coverage to $300,000 a person and an occurrence.[1] Similarly, Keysha Cash's grandfather, Arthur L. Hall, had a policy (hereinafter the Hall policy) issued by plaintiff containing an identical clause for underinsured motorist coverage.[2]

On October 15, 1991, plaintiff filed a complaint for interpleader on the basis that defendants had made conflicting claims for underinsured motorist coverage under the Leefers and Hall policies and were unable to agree upon a division of the benefits. Plaintiff offered to submit $250,000 to the court (representing the coverage of $300,000 an occurrence under the Leefers policy less the coverage of $50,000 a person paid under the Prather policy) and walk away from further liability for any damage that arose out of the accident. Plaintiff denied any liability under the Hall policy on the basis of a clause in the Hall policy that provides:

> This coverage shall not apply: (a) to bodily injury to an insured sustained while in, upon, entering or alighting from, any motor vehicle not owned by the insured if the owner has insurance similar to that afforded by this coverage and such coverage is available to the insured . . . .

On the basis of this exclusion and our Supreme Court's decision in *Rowland v DAIIE,* 388 Mich

[1] The underinsured motorist coverage was actually a separate endorsement for which Leefers and Hall paid an additional premium. However, the underinsured motorist clause expressly incorporates those terms of the policy that apply to the uninsured motorist coverage.

[2] For purposes of the motion for summary disposition only, plaintiff conceded that Cash resided with her grandfather and was a legitimate insured under that policy. We will make the same assumption for purposes of this appeal.

476; 201 NW2d 792 (1972), the trial court concluded that Cash was precluded from seeking underinsured motorist benefits under the Hall policy. Thereafter, the parties entered into a conditional consent decree whereby the $250,000 in underinsured motorist benefits available under the Leefers policy were distributed to defendants in prorated shares.[3]

On appeal, defendants[4] claim that because it is agreed that the aggregate amount of their injuries exceeds the adjusted $250,000 limitation of underinsured motorist coverage available under the Leefers policy, the underinsured motorist coverage that would otherwise be available to Cash is, in fact, not available and that, therefore, the identical exclusion in the Hall policy does not operate to preclude Cash's recovery of underinsured motorist benefits under the Hall policy. In response, plaintiff claims that because defendants have equal rights to the underinsured motorist coverage under the Leefers policy, the benefits are equally available to all and the clause in the Hall policy operates to exclude Cash's recovery of underinsured motorist benefits from the Hall policy. We resolve this issue of first impression in favor of plaintiff and affirm the decision of the trial court.

In determining that the aforementioned clause prevented Cash from availing herself of the underinsurance coverage under the Hall policy, the trial court relied upon our Supreme Court's decision in *Rowland.* On appeal, defendants seek to distin-

[3] The consent decree was conditioned on this Court's resolution of the issue at hand. Under the order, the estate of Phyllis Leefers was to retain $170,000 less attorney fees, while Cash was to retain $80,000 less fees.

[4] Throughout this opinion, we will use "defendants" to refer to the Leefers and Cash collectively. The majority of arguments made on appeal were presented in a brief filed by counsel for the Leefers. Cash merely filed a brief adopting the analysis of that brief as its position on appeal.

guish the holding of *Rowland,* while plaintiff argues that the case is controlling.

In *Rowland,* the claimant was a guest passenger who was injured when the host driver had an accident caused solely by the negligent acts of an uninsured motorist. The host driver and the guest passenger had policies of insurance with identical uninsured motorist coverage of up to $10,000 for each passenger. The guest passenger recovered $10,000 from the host driver's policy, which was admittedly insufficient to compensate her for the injuries she sustained. She then turned to her own policy of insurance and sought uninsured motorist benefits, which the trial court denied on the basis of an exclusion similar to the one in the Hall policy. In affirming the decision of the trial court, our Supreme Court concluded that the policies provided identical uninsured motorist coverage and that the guest passenger was limited to recovery under the host policy. *Rowland, supra* at 481. The Court found it significant that the host and guest were insured by the same company. *Id.*

In the present case, defendants argue that *Rowland* is distinguishable on two separate grounds. First, defendants claim that the $10,000 a person guarantee in the policies at issue in *Rowland* assured the policyholder that the funds articulated would be "available" to an insured, whereas in this case there was no such guarantee. Second, defendants argue that different purposes are served by uninsured motorist benefits than are served by the underinsurance benefits at issue here. While it is true that the *Rowland* case is factually distinguishable, we cannot agree with defendants that the differences warrant coverage under both the Leefers and Hall policies.

Because underinsured motorist benefits are not statutorily mandated, we must look to policy inter-

pretation to determine under what circumstances benefits are to be provided. *Rohlman v Hawkeye-Security Ins Co,* 442 Mich 520, 525; 502 NW2d 310 (1993). In interpreting a policy of insurance, we are obligated to construe clear and unambiguous provisions according to the plain and ordinary meaning of the terms as used in the provision. *Clevenger v Allstate Ins Co,* 443 Mich 646, 654; 505 NW2d 553 (1993). A provision is said to be ambiguous when its words may reasonably be understood in different ways. *Id.,* quoting *Raska v Farm Bureau Ins Co,* 412 Mich 355, 362; 314 NW2d 400 (1982). An ambiguous contract is to be construed against its drafter and in favor of coverage. *Id.* at 9.

In the instant case, we are faced with the task of construing an exclusion containing the term "available." While no court in this state has specifically construed that term, courts of foreign jurisdictions have done so. See *Hoffman v United Services Auto Ass'n,* 671 F Supp 922 (D Conn, 1987); *Kraft v Allstate Ins Co,* 6 Ariz App 276, 279; 431 P2d 917 (1967); *Gordon v Maupin,* 469 SW2d 848, 850 (Mo App, 1971). Each of those courts concluded that the term is ambiguous and is to be construed against the insurer. *Hoffman, supra* at 924; *Kraft, supra* at 279; *Gordon, supra* at 849-850. Each of the courts also concluded that the term "available," when construed in favor of the insured, meant "actually available" or "accessible," or that which is reasonably available, as opposed to that which is theoretically or hypothetically available. *Hoffman, supra* at 925; *Kraft, supra* at 279; *Gordon, supra* at 850.

In the instant case, we agree that the term "available" is ambiguous, inasmuch as it is capable of being defined in different ways. *Clevenger, supra* at 654. Moreover, we agree with those juris-

dictions cited above that have construed the term to mean that which is "actually" or "reasonably" available to the insured. However, we are persuaded that defendant Cash has failed to establish that the underinsured motorist benefits under the Leefers policy were not "actually" or "reasonably" available to her under the facts of this case, such that the exclusion under the Hall policy would be inapplicable. Thus, even though we believe an ambiguity is present and construe the ambiguity in favor of coverage, we are persuaded that defendants were provided the coverage intended under the Hall policy through recovery of benefits under the Leefers policy.

Part of the difficulty with this case is that neither policy contains a priority provision that fixes the order of liability for the payment of underinsured motorist benefits to each of the insureds.[5] In other terms, there is nothing in either policy or in the statutory framework that designates that any one of the insureds has primary coverage, such that one insured has a greater right to full compensation of injuries before any other insured may recover. Defendants make the argument that because the Leefers policy was purchased by the Leefers, the estate of Phyllis Leefers and Jauron Leefers should be entitled to recover underinsured benefits for their injuries before Cash can recover under the policy. However, as plaintiff points out, there is no contractual or legal support for such an argument.

Unlike those cases upon which defendants rely, there is nothing in this case to prevent defendant Cash from recovering her prorated portion of the

---

[5] In fact, the conditional consent decree provides for a prorated split of the $250,000 between the victims and suggests that none of the defendants had priority over another to the underinsured motorist benefits.

$250,000 in underinsurance benefits available under the Leefers policy. In fact, neither of the Leefers has shown a right to complete satisfaction before benefits are paid to defendant Cash. Moreover, neither of the Leefers has settled with, or obtained a judgment against, plaintiff for an amount of benefits that would render them "actually" or "reasonably" unavailable to Cash. Contrary to what defendants suggest, there is nothing in the policies that guarantees each insured *full* availability of the $300,000 in underinsured motorist benefits. Rather, the policies guarantee that in the event of an accident $300,000 in underinsured motorist benefits will be available to those insureds who have sustained injury.

Defendants also seek to distinguish this case from *Rowland* on the ground that a different type of insurance is at issue. In *Rowland,* the Court was faced with an "other insurance" clause as it pertained to uninsured motorist benefits, while in this case the "other insurance" clause applies to underinsured motorist benefits. Although we recognize the distinctions between the purposes of uninsured and underinsured motorist benefits, see Keeton & Widiss, Insurance Law, § 4.9(e)(3), pp 406-407, we believe that *Rowland* still controls where the identical coverage of one policy is available to an insured under another policy.

Our decision today is supported by our Supreme Court's statements in *Bradley v Mid-Century Ins Co,* 409 Mich 1; 294 NW2d 141 (1980). In construing an other-insurance clause that arose in the context of uninsured motorist coverage, Justice LEVIN stated:

> In a policy with an other insurance clause, the insurer makes no promise to provide coverage in the stated amounts without regard to the insured's

having available from other sources similar insur-
ance benefits or protection. *The insurer promises
only that the insured will have insurance coverage
in the stated policy limits from some source.* [*Id.* at
49. Emphasis added.]

Justice LEVIN further stated:

Since there is presently no requirement that the
premium charged for voluntarily provided and
purchased automobile insurance accurately reflect
the risk covered by such insurance [referring to
uninsured motorist benefits], and there is no evi-
dence that the insurer reaps a windfall, we cannot
say that other insurance clauses are unconsciona-
ble because they limit the coverage applicable to a
single accident to that provided by a single policy.
[*Id.* at 57.]

We believe these statements to be particularly
persuasive with respect to the coverage dispute
involved in this case.

When plaintiff issued the Hall and Leefers poli-
cies, it specifically stated on the declarations page
that underinsured motorist benefits were to be
provided up to $300,000 a person or an occurrence
subject to the setoffs clearly articulated in the
policy. Were we to construe the policy as defen-
dants ask, plaintiff would have to provide up to
$300,000 in underinsured motorist benefits for
each insured, notwithstanding the $300,000 an
occurrence limitation. This construction would
render the limitation of $300,000 in benefits an
occurrence meaningless and would subject the in-
surer to liability above that which it agreed to
provide. Such a result is contrary to the principles
of contract interpretation. See *Group Ins Co of
America v Czopek,* 440 Mich 590, 596-597; 489
NW2d 444 (1992).

For the reasons expressed herein, the order of
the trial court granting summary disposition for
plaintiff is affirmed.