Kelly, J.
(dissenting). I join Justice Cavanagh’s dissenting opinion regarding the rule of reasonable expectations. I write separately to express my disagreement with the majority’s holding that no ambiguity exists in the contract terms under consideration. Because I believe that the Court of Appeals properly found the terms of the policy ambiguous and properly construed them against defendant, their drafter, I would affirm.
*76 A contractual provision is ambiguous if reasonably susceptible to two different interpretations. Farm Bureau Mut Ins Co of Michigan v Nikkei, 460 Mich 558, 566; 596 NW2d 915 (1999).
The disagreement in this case surrounds the interpretation of the “limit of liability clause” in the under-insured motorist endorsement. That provision states:
4'. limit of liability
a. Our Limit of Liability for Underinsured Motorist Coverage shall not exceed the lowest of:
(1) the amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all bodily injury liability bonds and policies available to the owner or operator of the underinsured automobile; or
(2) the amount by which compensatory damages for bodily injury exceed the total limits of those bodily injury liability bonds and policies.
b. The Limit of Liability is not increased because of the number of:
(1) automobiles shown or premiums charged in the Declarations;
(2) claims made or suits brought;
(3) persons injured; or
(4) automobiles involved in the occurrence.
Under this provision, plaintiffs may recover under-insured motorist benefits only up to the “Limit of Liability.” The “Limit of Liability” constitutes the difference between the $100,000 per person maximum and the liability amount “available to [Ward,] the owner or operator of the underinsured automobile.” Here, Ward’s policy covered $50,000 worth of liability per *77 occurrence. Thus, Ward had available $50,000 for payment to those claiming against him.
Ambiguity results from the use of “available” in this contract.[1] Webster’s dictionary defines the term as
1. suitable or ready for use; at band .... 2. readily obtainable; accessible .... 3. free or ready to be seen, spoken to, employed, etc.....4. having sufficient power or efficacy; valid .... [Random House Webster’s College Dictionary (1995).]
In a multiple claimant situation, these dictionary definitions support two interpretations of the word. First, “available” can mean the amount actually available to each claimant against Ward, considering that the claimants will split the benefits. Second, it can mean the amount potentially available to each claimant against Ward, as if only one claimant existed. Under the former interpretation, the insurance company should reduce the $100,000 per person limit by only $25,000, leaving a payment to each plaintiff of $75,000. Under the latter interpretation, the insurance company should reduce the $100,000 per person limit *78 by $50,000, leaving a payment to each plaintiff of $50,000.
Given the reasonableness of both interpretations, the Court should affirm the decision of the Court of Appeals in holding this contract provision ambiguous.
II
The majority attempts to sidestep this ambiguity by relying on ¶ 4(b)(2) and ¶ 4(b)(3) to interpret the word “available” in ¶ 4(a). According to the majority, “[t]hese later paragraphs settle any perceived ambiguity in ¶ 4(a)(1) by stating that the amounts to be paid will not be increased because of claims made, suits brought, or persons injured.” Ante at 50. The majority errs in relying on this provision.
Paragraph 4(b) does not state that the “amounts to be paid” will not be increased; rather, it states that the “Limit of Liability” will not be increased. Though the difference is subtle, the structure of the contract provisions makes the difference critical to the contract’s interpretation. Paragraph 4(a) defines the limit of liability. Paragraph 4(b) prevents an increase in that limit, but says nothing at all about what the limit is in the first place. It is in determining the limit of liability that we encounter the ambiguous term “available” and its several possible meanings.[2]
Thus, the provisions on which the majority relies fail to “settle any perceived ambiguity,” ante at 50. Because my examination of ¶¶ 4(b)(2) and (3) represents a reasonable interpretation of the contract pro *79 visions, it supports the conclusion that those provisions are ambiguous.
III
In sum, the Court of Appeals properly held the contract terms to be ambiguous. It was appropriate for the Court to construe them against defendant. Clevenger v Allstate Ins Co, 443 Mich 646, 654; 505 NW2d 553 (1993). Therefore, I would affirm the decision of the Court of Appeals.

 I note that the Court of Appeals in Auto-Owners Ins Co v Leefers, 203 Mich App 5; 512 NW2d 324 (1993), interpreting a different provision of an insurance contract written by the present defendant, found “available” to be ambiguous. The Court cited Hoffman v United Services Automobile Ass’n, 671 F Supp 922, 924-925 (D Conn, 1987), which commented upon the term as follows:
The word “available” could mean anything from “in hand” or “actually received” to “within reach” or “conceivably obtainable.” . . . What is available, or accessible or obtainable, can range widely depending on what conduct or events are necessary to bring the tangible object into possession .... As the extent of those events or conduct is not defined, the word is ambiguous.
The Leefers Court defined the term to mean those funds actually or reasonably available to the insured. 203 Mich App 11-12.

 Indeed, plaintiffs do not claim that the limit should be increased. Rather, they argue that defendant erred in calculating the limit initially by setting it too low.