*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHAN F. BEARD,

Plaintiff-Appellant,

v

PROGRESSIVE MARATHON INSURANCE, also
known as PROGRESSIVE MARATHON
INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
September 14, 2023

No. 360695
Wayne Circuit Court
LC No. 21-016469-NF

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

In this no-fault action for uninsured and underinsured motorist (UM/UIM) benefits, plaintiff Jonathan Beard appeals as of right the order of the trial court granting in part, and denying in part, summary disposition to defendant Progressive Marathon Insurance, also known as Progressive Marathon Insurance Company (Progressive), under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

This case arises out of a motor vehicle accident and Beard's post-accident claim for UM/UIM benefits under his insurance policy with Progressive. In late October 2018, Beard was driving in the parking lane of southbound Van Dyke in Detroit. Another driver, Mahlieka Molita Robinson, was also driving southbound on Van Dyke and, as she tried to change lanes to turn right on Warren Avenue, she sideswiped Beard's vehicle. Robinson was driving a rental vehicle at the time of the accident. Flexdrive Services, LLC (Flexdrive) owned the rental vehicle and Empire Fire and Marine Insurance Company (Empire) insured it. Flexdrive's policy with Empire included bodily injury liability coverage of up to $20,000 per person. At the time of the accident, Beard had an insurance policy with Progressive that provided UM/UIM coverage of up to $50,000 per person. In the portion of Beard's policy governing UM/UIM benefits, it states:

Any judgment or settlement for damages against an owner or operator of an *uninsured* motor vehicle that arises out of a lawsuit brought without [Progressive's] written consent is not binding on [Progressive]. You are permitted to file a lawsuit

-1-

against [Progressive] within the statute of limitations to have any dispute settled by a court of proper jurisdiction when you believe [Progressive has] not appropriately responded to your requests concerning such proceedings or you believe [Progressive has] acted inappropriately in handling your claim. [Emphasis added.]

The policy defines "uninsured motor vehicle" as "a land motor vehicle or trailer of any type:"

a. to which no bodily injury liability bond or policy applies at the time of the accident;

* * *

e. to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the declarations page.

The policy does not specifically define "underinsured motor vehicle."

Two other provisions of Beard's policy are relevant here. First, a UM/UIM coverage exclusion provided that Progressive could exclude UM/UIM coverage for "bodily injury sustained by any person if that person or the legal representative of that person settles without [Progressive's] written consent." Second, the general provisions found in Part VII of the policy state that "[i]f an insured person recovers from another without our written consent, the insured person's right to payment under any affected coverage will no longer exist."

In mid-February 2021,[1] Beard sued Progressive for personal-protection-insurance (PIP) benefits and raised third-party claims against Robinson and Flexdrive in Wayne Circuit Court Case No. 21-002005-NF. That case ultimately settled for $20,000 in mid-October 2021. Progressive did not consent to Beard's settlement with Robinson and Flexdrive in this previous case.

In late November 2021, Beard sued Progressive, this time seeking UM/UIM benefits. Beard alleged that Robinson was an "uninsured/underinsured motorist" and that Progressive refused to pay him UM/UIM benefits.

In late December 2021, Progressive answered the complaint, denying that it owed Beard for the full policy limits of UM/UIM benefits and asserting that he may not be entitled to UM/UIM benefits. It then moved for summary disposition under MCR 2.116(C)(10). Progressive argued that because Empire insured the vehicle Robinson was driving at the time of the accident, Beard's claim for UM/UIM benefits should be dismissed. Progressive also asserted that Beard settled with

---

[1] We take judicial notice of when Beard filed his initial suit against Progressive, Robinson, and Flexdrive. See MRE 201. See also Const 1963, art 6, § 1; *People v Snow*, 386 Mich 586, 591; 194 NW2d 314 (1972).

Robinson and Flexdrive in the previous case without Progressive's consent, contrary to the terms of Beard's policy. It therefore argued that there was no genuine issue of material fact that Beard's settlement precluded UM/UIM coverage under the policy.[2]

Beard responded to Progressive's motion for summary disposition. He noted that his claim was for underinsured motorist benefits and, at the time of the accident, Robinson was underinsured, not uninsured. Beard admitted that he had settled his case against Robinson and Flexdrive. He argued, however, that he still had a valid claim for underinsured motorist benefits. Specifically, Beard argued that his policy did not define an "underinsured" motor vehicle. He asserted that the policy only prohibited settlement without Progressive's consent for damages against an owner or operator of an "uninsured" motor vehicle. Beard therefore argued that the policy only prohibited him from settling a case related to uninsured motor vehicles, and a genuine issue of material fact remained regarding whether Progressive's consent was required for settlements related to underinsured motor vehicles.

After a hearing, the trial court granted summary disposition of Beard's claim for UM/UIM benefits. The court concluded that the definition of "uninsured motor vehicle" in the policy included the common understanding of "underinsured motor vehicle." The trial court found that the vehicle driven by Robinson in the accident constituted an uninsured vehicle under Beard's policy

> because the bodily injury liability bond or policy that applied at the time of the accident was in place, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for uninsured/underinsured motorist coverage shown on the declarations page. And the declarations page provided for $50,000. And because [Robinson's] maximum for bodily injury was $20,000, then that other vehicle was under the terms of the policy, an uninsured vehicle and that's the hiccup here.

The court determined that because the vehicle driven by Robinson was considered an "uninsured motor vehicle" under the Progressive policy, Beard's claim for UM/UIM benefits was barred by the settlement he reached without Progressive's consent. The trial court rejected Beard's argument that the policy's language was ambiguous, and his claim that there was a question of fact regarding whether his claim was barred under the policy's terms. Beard's attorney[3] conceded that there was no evidence that Beard tried to obtain consent from Progressive before settling with Robinson and Flexdrive. The court concluded that because of Beard's settlement without Progressive's consent,

---

[2] Progressive also argued that Beard's claim was barred by the statute of limitations. The trial court denied Progressive's motion for summary disposition as it related to the statute of limitations. Progressive concedes on appeal that the trial court's decision regarding the statute of limitations is not at issue here.

[3] Though Beard's attorney was Dionne E. Webster-Cox, Philip Alther, a recent law school graduate, argued the motion on Beard's behalf under MCR 8.120.

Progressive did not have to provide UM/UIM coverage to Beard. It therefore granted summary disposition in part and denied it in part. This appeal followed.

## II. PRESERVATION AND STANDARDS OF REVIEW

An issue must be raised in or decided by the trial court for it to be preserved for appeal. *Glasker-Davis v Auvenshire*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id*. "Consistent[] with that principle, a party . . . need not preserve an objection to a 'finding or decision' made by the trial court . . . ." *Id*., quoting MCR 2.517(A)(7). Nevertheless, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Id*. at 228. "This Court also has the power to consider an issue when necessary, even if unpreserved or not properly presented." *Id*.

Beard preserved his argument that the policy only prohibited settling lawsuits related to uninsured motor vehicles, and that a factual dispute remained on that issue with respect to underinsured motor vehicles. This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "The interpretation of a contract, such as an insurance policy, is also reviewed de novo." *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 507; 967 NW2d 841 (2021).

Beard did not raise below his argument that, in the absence of a subrogation clause, the requirement to obtain Progressive's consent before agreeing to a settlement is arbitrary, so the issue is unpreserved. See *Glasker-Davis*, 333 Mich App at 227. We therefore review this issue for plain error. See *Mr Sunshine v Delta College of Trustees*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358042); slip op at 2; see also *Wischmeyer v Schanz*, 449 Mich 469, 483, 483 n 26; 536 NW2d 760 (1995); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).[4] To demonstrate plain error, a party must show: (1) that an error occurred, (2) that the

---

[4] Our Court has applied two different standards to unpreserved issues in the civil context: plain-error, see, e.g., *Wischmeyer*, 449 Mich at 483 & n 26; *Mr Sunshine*, ___ Mich App at ___; slip op at 2; *Kern*, 240 Mich App at 336, and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194, 194 n 5; 920 NW2d 148 (2018) (acknowledging that the Michigan Supreme Court has applied the plain-error standard in the civil context and noting that the Michigan Supreme Court has yet to hold that plain-error is the correct standard to apply). Our Supreme Court has yet to state definitively which standard is the

error was plain, and (3) that the plain error affected the outcome of the proceedings. *Mr Sunshine*, ___ Mich App at ___; slip op at 2.

### III. CONSENT FOR SETTLEMENT

Beard argues that the trial court erred in granting summary disposition of his claim for underinsured motorist benefits on the basis of his settlement of his earlier lawsuit without Progressive's consent. He contends that the terms of his policy with Progressive were ambiguous, and he did not need to obtain permission to settle with Robinson and Flexdrive because the relevant consent provision only applied to uninsured motorist benefits, not underinsured motorist benefits. We disagree.

Because uninsured and underinsured motorist benefits are "not mandated by statute, the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Dawson v Farm Bureau Mut Ins Co of Michigan*, 293 Mich App 563, 568; 810 NW2d 106 (2011). Regarding uninsured and underinsured motorist benefits, this Court "must look to policy interpretation to determine under what circumstances benefits are to be provided." *Auto-Owners Ins Co v Leefers*, 203 Mich App 5, 10-11; 512 NW2d 324 (1993). "Insurance policies are interpreted like any other contract." *Bridging Communities, Inc v Hartford Cas Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 355955); slip op at 5, lv pending. "Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." *Kendzierski v Macomb County*, 503 Mich 296, 311; 931 NW2d 604 (2019) (citation omitted). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id.* (citation omitted). "A contract is ambiguous when, after considering the entire contract, its words may reasonably be understood in different ways." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). "Thus, when a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it lends one to understand there is no coverage under the same circumstances the contract is ambiguous." *Id.* (quotation marks and citation omitted). "An ambiguous provision in an insurance contract is construed against the insurer and in favor of coverage." *Id.*

We agree with Progressive that the UM/UIM benefits provision in the Progressive policy includes the term "underinsured motor vehicle," but Beard's arguments fail for a more basic reason: under the policy, settlement without consent may preclude coverage for uninsured, underinsured, or other benefits. Two other provisions in the policy govern settlements without consent, and neither references "uninsured" or "underinsured" vehicles. The first relevant

---

appropriate standard for the civil context. In practice, both standards are unforgiving. Here, we apply the plain-error standard because it provides a workable standard, as opposed to "raise-or-waive," which treats an issue as waived unless a panel decides there is a compelling reason to address an otherwise waived issue. See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008); see also *Shah*, 324 Mich App at 194-195 (declining to exercise jurisdiction to review a waived issue for want of a compelling reason to do so).

provision is found in the exclusions of the UM/UIM coverage provisions. It states that UM/UIM coverage "will not apply" "to bodily injury sustained by any person if that person or the legal representative of that person settles without our written consent." There is no mention of an "uninsured" or "underinsured" motor vehicle in this exclusion. The second provision is found in the policy's "General Provisions" section (Part VII). It provides: "If an insured person recovers from another without our written consent, the insured person's right to payment under any affected coverage will no longer exist." As with the relevant UM/UIM exclusion, there is no mention of an uninsured or underinsured motor vehicle in this general provision. All that matters under these provisions to preclude coverage (underinsured, uninsured, or other types of coverage) is that the insured, Beard, settled without Progressive's consent. There is no dispute that is what happened here. Accordingly, the trial court properly granted summary disposition of Beard's UM/UIM claim.

Because Beard settled his previous case with Robinson without Progressive's consent, Progressive is not required to provide UM/UIM coverage to Beard. The policy unambiguously states that UM/UIM coverage "will not apply . . . to bodily injury sustained by any person if that person or the legal representative of that person settles without our written consent." Because Beard settled his previous lawsuit arising out of the accident without Progressive's consent, the trial court did not err in granting summary disposition of Beard's claim for UM/UIM benefits.

As stated, the parties focus on whether the UM/UIM benefits provision in the Progressive policy includes the term "underinsured motor vehicle." Beard says that it does not, pointing out that the term "underinsured motor vehicle" is absent from the UM/UIM provision, which only includes the term "uninsured motor vehicle." Progressive, on the other hand, argues that the definition of "uninsured motor vehicle" encompasses "underinsured" vehicles. We agree with Progressive.

Beard incorrectly relies on language from the "Insuring Agreement" portion of the UM/UIM coverage section that, he says, means he was only prohibited from settling with an uninsured driver, not an underinsured driver. That language states, in relevant part: "Any judgment or settlement for damages against an owner or operator of an *uninsured* motor vehicle that arises out of a lawsuit brought without our written consent is not binding on us." Beard's reliance on this language is misplaced because it relates to a *lawsuit* brought without consent, not a settlement reached without consent.

Even if this provision applied, under the policy's terms, the definition of "uninsured motor vehicle" in the policy includes underinsured vehicles. The term "underinsured motor vehicle" is, as Beard notes, absent from the policy. But, as Progressive asserts, the policy defines an "uninsured motor vehicle" as, in relevant part, a vehicle to which "a bodily injury liability . . . policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the declarations page." Here, a bodily injury liability policy applied to the vehicle driven by Robinson at the time of the accident—it had a coverage limit of $20,000. The sum of the applicable limits of liability for bodily injury—$20,000—was less than the coverage limit for UM/UIM coverage shown on Beard's declarations page—$50,000. It was underinsured and constituted an "uninsured motor vehicle" under the Progressive policy. That the policy only includes the term "uninsured motor vehicle," not "underinsured motor vehicle," is immaterial here because, the definition of

"uninsured motor vehicle" encompasses underinsured vehicles. See *Wilkie*, 469 Mich at 59 (recognizing that this Court will not "discern ambiguity solely because an insured might interpret a term differently than the express definition provided in a contract.") (quotation marks and citation omitted). In other words, whether the "natural and ordinary meaning" of "underinsured" differs from that of "uninsured," as Beard contends, is irrelevant when the policy provides its own definitions. See *Cavalier Mfg Co v Employers Ins of Wausau (On Remand)*, 222 Mich App 89, 94; 564 NW2d 68 (1997) ("[T]he terms of an insurance contract are interpreted according to the definitions set forth therein, or, if none are provided, are given a meaning in accordance with their common usage.").

## IV. SUBROGATION

Beard also argues that even if Progressive is correct that settlement agreements entered with "underinsured" parties require the insurer's consent, this requirement is arbitrary in the absence of a subrogation clause in the policy. Though somewhat unclear, Beard appears to argue that, without a right to subrogation, requiring an insurer's consent to settle has no purpose and is unreasonable. We disagree.

Beard asserts that the policy does not contain a subrogation clause, and Progressive, therefore, does not have a right to subrogation. He is incorrect for two reasons. First, the policy contains a subrogation clause. Though it may not be explicitly labeled as a subrogation clause, we look to substance not form. See *Highland Park v State Land Bank Auth*, 340 Mich App 593, 607; 986 NW2d 638 (2022) ("Courts are not bound by a party's choice of labels because this would effectively elevate form over substance.") (quotation marks and citation omitted). The general provisions section of the policy (Part VII) contains a subheading entitled, "Our Rights to Recover Payment." This subsection of the policy provides that Progressive is "entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of our payment." It further provides:

> When an insured person has been paid by us and also recovers from another, the amount recovered will be held by the insured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against that insured person.

This is subrogation language. See *Black's Law Dictionary* (11th ed ) (defining "subrogation" as, in relevant part: "The principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy.").

Second, regardless of the presence of a subrogation clause, the plain language of the Progressive policy bars Beard's claim for UM/UIM benefits. We may not "abrogate[] unambiguous contractual provisions based on [our] own independent assessment of 'reasonableness,' " because it would "undermine[] the parties' freedom of contract." *Rory*, 473 Mich at 468-469. Because Beard's claim for UM/UIM benefits is unambiguously barred under the policy, the reasonableness or purpose of the requirement for a policyholder to seek Progressive's consent is irrelevant. Beard has failed to demonstrate that the trial court committed

plain error by granting Progressive's motion for summary disposition regardless of whether the policy contains a subrogation clause.

We affirm.

/s/ Sima G. Patel
/s/ Noah P. Hood